ORIGINAL

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FILED
OCT - 5 2006
U.S. COURT OF FEDERAL CLAIMS

| | |
|---|---|
| AUTOMATION TECHNOLOGIES, INC., Plaintiff, v. UNITED STATES, Defendant. | No. 06-694 C<br><br>BID PROTEST |

**COMPLAINT**
**FOR DECLARATORY AND INJUNCTIVE RELIEF**
**AGAINST UNLAWFUL AWARD OF CONTRACT**

Automation Technologies, Inc. ("ATI"), by counsel, states for its complaint against the United States as follows:

**NATURE OF THE CASE**

1. Plaintiff ATI brings this post-award procurement protest action to challenge the government's award of a contract to Digital Technologies, Inc. ("DTI") under a solicitation for information technology ("IT") hardware maintenance services for a large, mission-critical data center.[1]

2. The procuring agency awarded the contract, valued at up to $49.5 million over five years, under a negotiated "best-value/tradeoff" solicitation calling for ongoing, 24/7/365

[1] This procurement protest action is a follow-on to an action in which plaintiff ATI challenged the procuring agency's determination to override the mandatory stay of performance imposed by the Competition in Contracting Act ("CICA") when ATI protested the contract award at the Government Accountability Office ("GAO"). For the order declaring invalid and setting aside the agency's override determination, see *Automation Technologies, Inc. v. United States and Digital Technologies, Inc.*, No. 06-599C (Fed. Cl. unsealed order issued Sept. 21, 2006) (Horn, J.).

services that ATI is currently performing under a delivery order that runs through October 31, 2006.

3. The procuring agency based its award decision on a purported tradeoff analysis, but the one-sentence purported analysis is arbitrary, capricious, and contrary to law because it failed to make the comparative assessment required by Federal Acquisition Regulation ("FAR") § 15.308. Such an assessment would have shown that ATI's higher technically rated and only moderately more expensive proposal represents the best value in this procurement, which was heavily weighted in favor of the technical and past performance evaluation factors rather than price. By failing to perform a proper tradeoff analysis, or even to recognize the different weightings that the RFP assigned to the technical and the past performance evaluation factors, the agency deviated from the source selection criteria and effectively converted the procurement from a best-value/tradeoff procurement into one for the technically-acceptable, lowest-cost proposal. Stated differently, the agency changed the ground rules at the last minute to take advantage of perceived cost savings available from an offeror that was technically "acceptable."

4. In addition, as an independent ground for overturning the award, the procuring agency based its award decision on flawed technical and past performance evaluations, which, among other things, failed to give ATI proper credit for fully addressing two perceived weaknesses in its technical proposal that the agency pointed out in discussions.

5. Finally, following the receipt of final proposal revisions ("FPRs"), the procuring agency engaged in unequal discussions in that they were intended to have, and did have, the effect of favoring DTI to enable to agency to take advantage of the last-minute opportunity to obtain cost savings from DTI's lower-rated but "acceptable" proposal.

## JURISDICTION

6. This Court has jurisdiction over this procurement protest matter under section 1491(b)(1) of the Tucker Act.

7. The remedies that ATI seeks are authorized by the Tucker Act, 28 U.S.C. § 1491(b)(1), and by the Declaratory Judgment Act, 28 U.S.C. § 2201 – 2202.

## PARTIES

8. Plaintiff ATI is a professional services firm providing information technology ("IT") consulting and support services to federal government and commercial customers. ATI is a Delaware corporation with its principal place of business at 1950 Old Gallows Road, Suite 350, Vienna, Virginia 22182. ATI is the incumbent contractor for the work called for by the underlying solicitation and has been performing that work continuously since July 2004, when it took over the work from DTI, the previous incumbent contractor.

9. Defendant is the United States of America, acting by and through the Department of Homeland Security, Bureau of Customs and Border Protection ("CBP"), which is the procuring agency. CBP's contracting officer is Thomas M. Uberto, whose address is Department of Homeland Security, Customs & Border Protection, Office of Procurement – Room 1310 NP, 1300 Pennsylvania Ave., N.W., Washington, D.C. 20229.

## STATEMENT OF FACTS

### A. The Procurement History

10. The CBP Data Center Complex is an extensive, mission-critical facility that includes approximately 1,600 pieces of computer equipment at any given time, with frequent additions to and removals of equipment. It is a major undertaking to maintain all of this equipment and to do so on a 24/7/365 basis, with a goal of constant 100% availability. Indeed,

given the vast array of equipment, it requires special expertise and effort simply to keep track of what equipment is present in the center and under maintenance at any given point in time, and what equipment has been retired and removed from the center and, therefore, is no longer in need of maintenance or subject to monthly maintenance charges.

11. Under a predecessor contract held by DTI, DTI performed the computer hardware maintenance work at issue here up until about July 2004, during which time DTI reportedly experienced persistent performance problems. In July 2004, CBP awarded a successor contract to ATI.

12. When ATI began work under the contract, it found that the records of the current inventory of equipment were in disarray. The records did not reflect significant amounts of equipment that were actually present in the data center and, therefore, in need of ongoing preventive and remedial maintenance to ensure its ongoing availability. At the same time, the records continued to show (and CBP had continued to incur charges under DTI's contract for) significant amounts of equipment that had been removed from the center. ATI brought the situation under control and sufficiently impressed CBP that CBP decided to add substantial new work to the contract.

**B. The Solicitation**

13. CBP's proposed addition of the new work required it to conduct a new procurement. Accordingly, on or about September 30, 2005, CBP issued a request for proposals (RFP No. HSBP10-05-R-0541) for a new and expanded contract for on-site preventive and

remedial maintenance of the mainframe computers, storage units and other peripheral equipment located at the center. *See* Administrative Record ("AR"), Tab 1.[2]

14. The RFP contemplated the award of a fixed-unit-price, indefinite-delivery/indefinite-quantity ("IDIQ") contract, with a guaranteed minimum of $2,500 worth of orders and annual ordering ceilings of $9.9 million for each of the base period and four option periods, for a total contract ceiling of $49.5 million. *See* RFP, Amend. 0002, at 3 (AR, Tab 3).

15. The RFP stated that CBP would award the contract on a "best value" basis, which would be determined through the use of a technical/price trade-off analysis. RFP § A.40, at 37 (AR, Tab 1, at 44). The RFP specifically noted that CBP could award the contract "to other than the lowest priced offeror(s) . . . ." *Id.* The RFP established three evaluation factors, which, in descending order of importance were stated to be:

- Technical factors [sic]
- Past Performance
- Cost/Price factors [sic]

RFP § A.41, at 37 (AR, Tab 1, at 44).

16. The RFP made clear that CBP was more interested in quality than in price. Indeed, it stated that the technical merits of an offeror's proposal would be "significantly more important" than its past performance, and that past performance in turn would be "significantly more important" than price. RFP § A.41, at 37 (AR, Tab 1, at 44). To emphasize these priorities, the RFP further stated that:

---

2 References in this Complaint to the Administrative Record are to the record that the government filed with the Court in the above-referenced override case.

> [t]he Government is more concerned with obtaining superior technical and performance capability (demonstrated by past performance) than with making an award at the lowest cost or price.

*Id.* § A.41, at 37 (AR, Tab 1, at 44).

17. The technical and past performance factors were divided into subfactors. The technical factor was divided into six subfactors, which were worth a total of 730 points, as follows:

| **Maximum Point Value** | **Technical Subfactors** |
|---|---|
| 300 | Ensuring constant service availability |
| 150 | Complying with OEM service recommendations |
| 100 | Demonstrated understanding of the Government's requirements |
| 100 | Pertinent qualifications (certifications, etc.) |
| 40 | Process management |
| 40 | Quality Assurance Surveillance Plan |

RFP, Attachment D, "Technical Evaluation Scoring Sheet" (AR, Tab 1, at 95).

18. Similarly, the past performance factor was divided into three subfactors, which were worth a total of 600 points, as follows:

| Maximum Point Value | Past Performance Subfactors |
|---|---|
| 200 | Offeror ensured constant service availability |
| 200 | Offeror's performance conformed to the terms and conditions of its contract/agreement |
| 200 | Offeror was committed to customer satisfaction |

*Id.* Accordingly, a combined maximum of 1330 points were available.

19. CBP's evaluation plan was summarized on the technical evaluation scoring sheet referred to above. According to the scoring sheet, the initial technical evaluation was to be performed on an adjectival basis. The adjectival rankings were then to be converted to numeric scores using the point values included on the scoring sheet and shown above. As the last step in the evaluation process, CBP was to sum the numeric scores for all of the technical and past performance subfactors and calculate an overall percentage score. *Id.* The RFP did not indicate how, if at all, CBP intended to use this percentage score.

**C. The Submission of Proposals and Discussions**

20. In October 2005, ATI, DTI, and a third offeror submitted proposals in response to the RFP. Following discussions, each of the three offerors submitted final proposal revisions ("FPRs"). DTI's price proposal was inordinately higher than the other two proposals, suggesting some sort of fundamental misunderstanding on its part. *See* PNM (Dec. 29, 2005), § F, at 5 (AR, Tab 4, at 109).

21. On or about October 28, CBP held oral discussions with ATI, in which CBP indicated that ATI's technical score was 65%. On November 18, CBP followed up with a letter indicating that ATI's overall score (that is, the combined technical and past performance score) was 83%. In the discussions, CBP raised two perceived weaknesses in ATI's technical proposal,

one relating to the constant availability requirement and the other to its program manager's qualifications in the area of UNIX software.

22. ATI duly submitted an FPR by the due date of December 1. In the FPR, ATI fully and adequately addressed the two perceived weaknesses that CBP had identified.

**D. Initial Award to ATI and DTI's Bid Protests**

23. In late December 2005, CBP awarded ATI a resulting contract (No. HSBP10-06-C-1143). The base period of this contract runs through December 31, 2006, but the current delivery order expires at midnight on October 31, 2006.

24. On or about January 10, 2006, DTI filed a bid protest with CBP, in which it challenged the suggested pricing format that CBP had included in the RFP and raised other pricing-related allegations. On January 11, CBP dismissed the protest in part as untimely and denied it in part on the merits. DTI then filed a bid protest at GAO. *See* AR, Tab 6. In response to this protest, CBP decided to take corrective action, as a result of which GAO dismissed the protest as academic. *See Digital Technologies, Inc.*, B-297851 (Mar. 23, 2006) (notice of dismissal) (AR, Tab 11).

**E. The Re-Opened Competition and Resulting Award to DTI**

25. On March 31, CBP issued a solicitation amendment in which it re-opened the competition and called for the submission of revised price proposals only. *See* RFP, Amend. 0003, at 1 (Mar. 31, 2006) (AR, Tab 12, at 203) ("[r]evised technical proposals will not be accepted"). The amendment provided new pricing formats substantially identical to those that ATI had earlier submitted in response to the solicitation. These formats disclosed valuable pricing information to DTI, along with the identities of OEMs, such as IBM, ViON and Fujitsu, on which ATI was relying in its proposal, as well as the identity of the equipment that each OEM

was maintaining. *See id.*, Attach. C. Pursuant to these formats, CBP was to evaluate price based on a sample mix of work.

26. On April 6, CBP issued a further amendment in which it disclosed the three offerors' overall percentage scores (*i.e.*, each offeror's *combined* technical and past performance score). The amendment indicated that Offeror 1 had received a score of 85%; Offeror 2 had received a score of 76%; and Offeror 3 had received a score of just 49%. *See* RFP, Amend. 0004, at 2 (Apr. 6, 2006) (AR, Tab 13, at 211). The amendment further disclosed ATI's proposed pricing, on a line-item by line-item basis. *See id.* at 3 (AR, Tab 13, at 212).

27. On April 11, ATI timely submitted a revised price proposal.

**F. The Post-FPR Discussions**

28. On June 15, 2006, CBP's contracting officer sent letters to ATI and DTI requesting copies of their agreements with OEMs. ATI's December 1, 2005 FPR stated that a key OEM, Fujitsu, was bound to work exclusively with ATI. Hence, it seems that the purpose of CBP's request was to determine whether DTI in fact would be able to use Fujitsu if CBP awarded the contract to DTI. *See* PNM (Aug. 15, 2006) at 8 (AR, Tab 16, at 233).[3] The letter to ATI makes clear that CBP sought this information from DTI only because DTI's proposed pricing, as revised and submitted in the April round of FPRs, was lower than ATI's proposed pricing. *See* CBP OEM Letter to ATI (June 15, 2006) ("*Since the submission of revised price proposals has resulted in a shift in the relative pricing position of offerors*, it will be necessary

---

3 The Administrative Record in the override case indicates that the contracting officer initially completed and signed the PNM on June 28, 2006. *See* AR, Tab 14. Agency counsel thereafter provided comments for incorporation into the PNM before the actual award. The contracting officer incorporated those comments, which pertain only to the third offeror, and re-signed the PNM on August 15, 2006. *See* AR, Tab 16.

for all offerors that cited such OEM agreements to submit copies of the OEM agreements to the Government for verification") (emphasis added).

29. DTI responded by supplying a letter stating that Fujitsu was prepared to enter into an agreement with DTI. *See* PNM at 8 (AR, Tab 16, at 233).

**G. The Award to DTI and Its Rationale**

30. On Friday, August 4, 2006, CBP notified ATI that it had awarded a contract to DTI. ATI later learned that CBP had awarded the contract on or about July 26.

31. On Monday, August 7, ATI timely requested a debriefing from CBP, which CBP supplied in written form later that day. The debriefing, little more than a single page long, indicated that ATI's *combined* technical and past performance score was 85%, while DTI's combined score was just 76% (representing a difference of almost 12%). The debriefing did not disclose or discuss the *separate* technical scores or past performance scores underlying the combined scores. *See* CBP Debriefing Letter (Aug. 7, 2006).

32. The debriefing also indicated that ATI's evaluated price for the sample tasks was approximately $46.6 million, while DTI's evaluated price was approximately $39.7 million (representing a difference of about 17%). *Id.*

33. The debriefing provided by CBP explained the tradeoff decision in a single sentence, as follows:

> In this instance, the difference in price was simply too great to overcome given the comparatively small difference in technical/past performance scores.

*Id.* at 2. The debriefing provided no further explanation of the tradeoff analysis or source selection decision. Moreover, it contained no recognition of the RFP's emphasis on technical merit and past performance.

34. Despite recognizing that ATI's technical proposal offered "a long list of advantages and benefits" (PNM at 8; AR, Tab 16, at 233), CBP's price negotiation memorandum, authored by the contracting officer, provided a similarly short and conclusory explanation for the decision to select DTI, stating in relevant part as follows:

> *CBP is unwilling to pay 17% more than DTI's offered price* to obtain a 9 percentage point increase in technical [sic] scoring, particularly when DTI has provided this service to CBP in the past at an *acceptable performance level.*

*Id.* (emphasis added). The PNM thus relied only on the offerors' combined technical and past performance scores. It failed to break out or consider the separate technical and past performance evaluations and scores underlying the combined scores. *See generally id.* at 6-8 (AR, Tab 16, at 231-33). The PNM also failed to set forth the requisite "comparative assessment of proposals against all source selection criteria in the solicitation." FAR 15.308.

**H. ATI's GAO Bid Protest and the Override Action**

35. On Friday, August 11, ATI filed a post-award bid protest at GAO challenging the award to DTI and requesting that CBP suspend contract performance pursuant to the automatic stay provision of CICA. GAO notified CBP of the protest later that same day, thereby triggering the automatic stay. *See* 31 U.S.C. § 3553(d)(3)(A).

36. In its GAO protest (docketed as B-298618), ATI challenged CBP's failure to perform a proper technical/price tradeoff analysis (effectively converting the procurement into a technically-acceptable, low-cost procurement) and its flawed evaluations of the offerors' technical proposals and past performance.

37. On or about August 17, CBP overrode the CICA stay, citing cost savings as its only rationale for doing so. *See* AR, Tab 17, at 2 (override memorandum prepared by contracting officer) ("[r]esumption of contract performance [by DTI] will result in significant

savings to the Government"). Plaintiff ATI challenged the override in this Court. Ruling from the bench on August 31, the Court declared the override invalid and set it aside. *See generally Automation Technologies*, No. 06-599C, (Fed. Cl. unsealed order issued Sept. 21, 2006).

38. Following the Court's ruling, CBP issued a delivery order to ATI extending its work by three months to carry through until the end of November.

**I. GAO's Dismissal of ATI's Protest and ATI's Request for Reconsideration**

39. On September 6, GAO dismissed ATI's underlying bid protest on the ground that ATI, having already received an award under the RFP, could not have been legally prejudiced by the subsequent award to DTI. The next day, September 7, CBP issued a modification to ATI's delivery order curtailing the period of performance by one month and setting a new expiration date at the end of October.

40. On September 12, ATI timely filed a request for reconsideration at GAO (docketed as No. B-298618.3). At the request of ATI, GAO processed the request for reconsideration on an expedited basis. On October 4, GAO issued a decision denying the request, again on the ground that ATI had received an award as well as delivery orders for more than the guaranteed minimum of $2,500 worth of work, which, in GAO's view, precluded a finding of legally cognizable prejudice.

**J. The Agency's Planned Transition to DTI**

41. Although ATI is currently performing as the incumbent contractor for the work, ATI's current delivery order expires at the end of October. According to its submissions to GAO, the procuring agency intends to transition the work to DTI at that time and does not intend to exercise any of the options in ATI's contract.

**COUNT I**
**(Unreasonable Source Selection Decision;**
**Violation of 41 U.S.C. § 253b(a) and FAR 15.308)**

42. Plaintiff ATI incorporates by reference all preceding paragraphs.

43. Contrary to FAR 15.308 and the source selection criteria set forth in the RFP, CBP failed to conduct an adequate technical/price tradeoff analysis. By failing to do so, CBP effectively converted this best-value, tradeoff procurement – heavily weighted in favor of, first, technical excellence; second, past performance; and only then price – into a technically-acceptable, lowest-cost procurement.

44. Plaintiff ATI has suffered injury and will continue to suffer injury because of CBP's failure to conduct a proper technical/price tradeoff analysis. ATI has no adequate remedy at law for this injury (or for the injuries described below).

**COUNT II**
**(Unreasonable Technical and**
**Past Performance Evaluations)**

45. Plaintiff ATI incorporates by reference all preceding paragraphs.

46. CBP unreasonably evaluated ATI's proposal in that it gave ATI a combined technical/past performance score of only 85% even though ATI is the incumbent, more-qualified contractor and even though ATI's FPR fully addressed the constant availability requirement and its program manager's qualifications in response to CBP's indications during discussions that ATI's proposal had certain perceived weaknesses in those areas. Even though ATI's responses fully and adequately addressed the perceived weaknesses, CBP made little or no adjustment to ATI's technical score.

47. In addition, CBP unreasonably failed to downgrade DTI's technical proposal for its inadequate understanding of CBP's hardware maintenance requirements (one of the six

technical evaluation subfactors), as reflected in DTI's unrealistically low pricing, particularly for CLIN 0002, which involves certain mainframe computers, and CLIN 0010, which involves certain direct-access storage devices on which CBP is placing increasing reliance. Both of these categories of equipment are mission-critical. Hence, any failure to properly carry out preventive or remedial maintenance would jeopardize their availability and, thus, CPB's ability to carry out its mission.

48. Similarly, CBP unreasonably failed to downgrade DTI's past performance score despite DTI's history of poor performance as the previous incumbent contractor for this work.

49. CBP's unreasonable evaluation of the technical proposals and past performance records has prejudiced ATI. Had CBP properly evaluated the proposals, it would have raised ATI's technical score (raising, in turn, its combined score) and downgraded DTI's technical score (lowering, in turn, its combined score). As a result, the differences between ATI's and DTI's technical and combined scores would have been even more pronounced, and ATI's chances of winning the award, already reasonably good, would have been even better.

**COUNT III**
**(Unequal Discussions)**

50. Plaintiff ATI incorporates by reference all preceding paragraphs.

51. By soliciting and accepting an OEM letter from DTI in June 2006, following the receipt of FPRs, CBP effectively provided DTI – and DTI alone – an unequal opportunity to revise material terms of its technical proposal and thereby improve its proposal, to the detriment of ATI.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff ATI requests that this Court:

1. Enter a *declaratory judgment* holding that CBP's award of the contract to DTI is arbitrary, capricious, or otherwise not in accordance with law, and setting it aside;

2. Issue a *preliminary injunction* prohibiting CBP from permitting DTI to proceed with performance of the protested contract pending the entry of a final judgment in this procurement protest action.

3. Issue a *permanent injunction* (a) prohibiting CBP from permitting DTI to proceed with contract performance pending a recompetition; (b) requiring CBP to (1) determine its actual needs with respect to evaluation factors and source selection criteria (*i.e.*, "best value" versus "technically acceptable"); (2) re-open the procurement and issue a revised solicitation reflecting its actual needs, if appropriate; (3) call for and accept revised technical and price proposals; (4) conduct new technical and price evaluations consistent with the evaluation factors; (5) hold a new round of discussions, if appropriate; and (6) make a new source selection decision consistent with the source selection criteria.

4. Award plaintiff ATI its costs, including reasonable attorneys' fees and expenses.

5. Grant plaintiff ATI such other or further relief that the Court deems just and proper in the circumstances.

Dated: October 5, 2006

Respectfully submitted,

Walter F. Zenner
PILLSBURY WINTHROP
SHAW PITTMAN LLP
1650 Tysons Boulevard
McLean, Virginia 22102
Tel: (703) 770-7603
Fax: (703) 770-7901

*Counsel of Record for Plaintiff Automation Technologies, Inc.*

*Of Counsel:*

John E. Jensen
Orest J. Jowyk
PILLSBURY WINTHROP
SHAW PITTMAN LLP
1650 Tysons Boulevard
McLean, Virginia 22102
Tel: (703) 770-7900

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| AUTOMATION TECHNOLOGIES, INC., Plaintiff, | ) | No. 06-694 C |
| v. | ) | |
| UNITED STATES, Defendant. | ) | BID PROTEST |

**CERTIFICATE OF SERVICE**

I hereby certify that I have caused to be delivered, by hand, facsimile, or electronic means, on this 5th day of October, 2006, copies of (1) plaintiff Automation Technologies, Inc.'s ("ATI's)" Complaint for Declaratory and Injunctive Relief, (2) ATI's Motion for Expedited Completion of the Administrative Record; and (3) ATI's Corporate Disclosure Statement, on the following counsel:

Roger A. Hipp, Esq.
Department of Justice
Commercial Litigation Branch
Civil Division
1100 L Street, N.W., 8th Floor
Washington, D.C. 20530
*Counsel for Defendant*

Leslie H. Wiesenfelder, Esq.
Dow Lohnes PLLC
1200 New Hampshire Ave., N.W.
Washington, D.C. 20036
*Counsel for Awardee Digital Technologies, Inc.*

Walter F. Zenner