**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
(Electronically Filed on October 7, 2006)

| | |
|---|---|
| AUTOMATION TECHNOLOGIES, INC., Plaintiff, | No. 06-694C |
| v. | (Judge Horn) |
| UNITED STATES, Defendant. | BID PROTEST |

**PLAINTIFF AUTOMATION TECHNOLOGIES, INC.'S MEMORANDUM IN SUPPORT OF ITS PROTECTIVE MOTION FOR A PRELIMINARY INJUNCTION TO PREVENT TRANSITIONING CONTRACT PERFORMANCE TO AWARDEE DIGITAL TECHNOLOGIES, INC.**

Walter F. Zenner
PILLSBURY WINTHROP
SHAW PITTMAN LLP
1650 Tysons Boulevard
McLean, Virginia 22102
Tel: (703) 770-7603
Fax: (703) 770-7901

*Counsel of Record for Plaintiff Automation Technologies, Inc.*

*Of Counsel:*

John E. Jensen
Orest J. Jowyk
PILLSBURY WINTHROP
SHAW PITTMAN LLP
1650 Tysons Boulevard
McLean, Virginia 22102
Tel: (703) 770-7900

Dated: October 7, 2006

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .......... iii

INTRODUCTION .......... 1

QUESTION PRESENTED .......... 3

STATEMENT OF THE CASE .......... 3

A. The Procurement History .......... 3

B. The Solicitation and Its Evaluation Scheme .......... 4

C. The Submission of Proposals and the Ensuing Discussions .......... 7

D. The Initial Award to ATI and DTI's Bid Protests .......... 7

E. The Recompetition .......... 8

F. The Post-FPR Discussions .......... 9

G. The Award to DTI and Its Cost-Savings Rationale .......... 10

H. ATI's GAO Bid Protest and the COFC Override Action .......... 11

I. GAO's Dismissal of ATI's Protest and ATI's Request for Reconsideration .......... 12

J. The Agency's Upcoming Transition to DTI .......... 12

ARGUMENT .......... 13

I. UNDER THE TRADITIONAL FOUR-PART TEST, PLAINTIFF ATI IS ENTITLED TO A PRELIMINARY INJUNCTION TO PREVENT THE PROCURING AGENCY FROM TRANSITIONING CONTRACT PERFORMANCE TO AWARDEE DTI .......... 13

A. Plaintiff ATI Is Likely to Prevail on the Merits of This Bid Protest Case .......... 14

1. CBP's Source Selection Decision Violates Procurement Law and Procedure .......... 14

a. In Violation of FAR 15.308, CBP Failed to Perform or Document a Proper Technical/Price Tradeoff Analysis .......... 14

b. In Violation of 41 U.S.C. § 253a, CBP Unreasonably Treated the Proposals as Essentially Equal and Thereby Converted the Procurement into a Technically-Acceptable, Lowest-Cost Competition .......... 17

c. Had CBP Performed a Proper Tradeoff Analysis Consistent with the Evaluation and Source Selection Criteria, It Most Likely Would Not Have Awarded the Contract to DTI .......... 18

2. CBP Misevaluated the Technical Proposals .......... 19

a. CBP Unreasonably Failed to Give ATI Credit for Its Responses to the Perceived Weaknesses in the Areas of Constant Availability and the Program Manager's Qualifications .......... 19

b. CBP Unreasonably Failed to Downgrade DTI for Its Inadequate Understanding of CBP's Maintenance Requirements .......... 20

B. Absent Preliminary Injunctive Relief, Plaintiff ATI Will Suffer Irreparable Harm .......... 21

C. The Balance of Hardships Tilts in Favor of Plaintiff ATI .......... 22

D. Preliminary Injunctive Relief Will Serve the Public's Interest in Proper Enforcement of the Procurement Laws .......... 23

CONCLUSION AND RELIEF REQUESTED .......... 23

APPENDIX OF EXHIBITS

1. Third Declaration of Paul D. Fauser (Oct. 7, 2006)

2. CBP OEM Letter to ATI (June 15, 2006)

3. CBP Debriefing Letter to ATI (Aug. 7, 2006)

# TABLE OF AUTHORITIES

Cases

*Automation Technologies, Inc. v. United States*,
No. 06-599C, slip op. (Fed. Cl. unsealed order issued Sept. 21, 2006) ......................11, 12

*Avtel Services, Inc. v. United States*,
70 Fed. Cl. 173 (2005) ......................................................................................................14

*Cardinal Maintenance Services, Inc. v. United States*,
63 Fed. Cl. 98 (2004) ........................................................................................................21

*CIGNA Government Services, LLC v. United States*,
70 Fed. Cl. 100 (2006) ......................................................................................................22

*Delbert Wheeler Constr., Inc. v. United States*,
39 Fed. Cl. 239, 251 (1997), *aff'd*, 155 F.3d 566 (Fed. Cir. 1997)..................................13

*FMC Corp. v. United States*,
3 F.3d 424 (Fed. Cir. 1993)................................................................................................14

*Information Sciences Corp. v. United States*,
No. 05-1342C, slip op. (Fed. Cl. Sept. 19, 2006) ..................................15, 16, 21, 22, 23

*LABAT-Anderson, Inc. v. United States*,
65 Fed. Cl. 570 (Fed. Cir. 2005).........................................................................................23

*OTI America, Inc. v. United States*,
68 Fed. Cl. 646 (2005)........................................................................................................21

*Overstreet Electric Co. v. United States*,
47 Fed. Cl. 728 (2000)........................................................................................................21

*PGBA, LLC v. United States*,
389 F.3d 1219 (Fed. Cir. 2004)................................................................................21, 22, 23

*SAI Industries v. United States*,
60 Fed. Cl. 731, 747 (2004)................................................................................................21

*Zenith Radio v. United States*,
710 F.2d 806 (Fed. Cir. 1983) ............................................................................................13

Comptroller General Decisions

*DLI Eng'g Corp.*,
B-218335, June 28, 1985, 85-1 CPD ¶ 742 ......................................................................18

*Gemmo Impianti, S.p.A.*,
B-290427, Aug. 9, 2002, 2002 CPD ¶ 146 ....................19

*Preferred Systems Solutions, Inc.*,
B-292322, Aug. 25, 2003, 2003 CPD ¶ 166 ....................16, 17, 18

*Simmonds Precision Products, Inc.*,
B-244559.3, June 23, 1993, 1993 WL 239120, at *11 ....................20

*TMC, Inc.*,
B-230078, May 24, 1988, 88-1 CPD ¶ 492 ....................18

Statutes and Regulations

41 U.S.C. § 253a ....................2, 17

FAR 15.308 .................... 1, 11, 14, 15-16

FAR 15.506 ....................19

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
(Electronically Filed on October 7, 2006)

| | | |
|---|---|---|
| AUTOMATION TECHNOLOGIES, INC., | ) | |
| Plaintiff, | ) | No. 06-694C |
| v. | ) | (Judge Horn) |
| UNITED STATES, | ) | |
| Defendant. | ) | BID PROTEST |

**PLAINTIFF AUTOMATION TECHNOLOGIES, INC.'S MEMORANDUM IN SUPPORT OF ITS PROTECTIVE MOTION FOR A PRELIMINARY INJUNCTION AGAINST CONTINUED CONTRACT PERFORMANCE BY AWARDEE DIGITAL TECHNOLOGIES, INC.**

## INTRODUCTION

In this post-award bid protest action, plaintiff Automation Technologies, Inc. ("ATI"), the incumbent contractor, seeks to preliminarily enjoin the U.S. Department of Homeland Security, Bureau of Customs and Border Protection ("CBP") from transitioning performance of the work to Digital Technologies, Inc. ("DTI") under its unlawfully awarded contract.

CBP awarded the contract under a "best-value/tradeoff" solicitation for information technology ("IT") hardware maintenance services, on a 24/7/365 basis, for a large, mission-critical data center. The contract is valued at up to $49.5 million over five years. Plaintiff ATI is currently performing these services under a delivery order that runs through the end of October, when CBP intends to transition the work to DTI.

CBP based its award decision on a purported tradeoff analysis, but that analysis is arbitrary, capricious, and contrary to law because it failed to make or document the comparative

assessment required by Federal Acquisition Regulation ("FAR") § 15.308. Such an assessment would have shown that ATI's higher-rated technical proposal and only moderately more expensive price proposal represent the best value in this procurement, which was heavily weighted in favor of the technical and past performance evaluation factors rather than price. By failing to perform a proper tradeoff analysis, or even to recognize the different weightings of the technical and the past performance evaluation factors, the agency deviated from the source selection criteria, in violation of 41 U.S.C. § 253a, and effectively converted the procurement from a best-value/tradeoff procurement into one for the lowest-cost, technically-acceptable proposal. In short, the agency changed the ground rules at the last minute to take advantage of perceived cost savings available, following the second round of final proposal revisions ("FPRs"), from an offeror that, in the contracting officer's words, was "acceptable."

As an independent ground for overturning the award, CBP misevaluated the technical proposals. Among other things, CBP failed to give ATI proper credit for its responses to two perceived technical proposal weaknesses that the agency identified in discussions with ATI and which ATI fully addressed and resolved in its first FPR.

Finally, following the receipt of a second round of FPRs, CBP engaged in unequal discussions that were intended to have, and did have, the effect of favoring DTI by making its proposal "acceptable." In doing so, CBP cleared the way, in its view, simply to take advantage of the unanticipated, last-minute, cost savings opportunity presented by DTI's lower-rated proposal.

## QUESTION PRESENTED

1. Whether plaintiff ATI is entitled to a preliminary injunction to prevent the procuring agency, pending the entry of final judgment in this case, from transitioning the work from ATI, the incumbent contractor, to awardee DTI under an unlawfully awarded contract?

## STATEMENT OF THE CASE[1]

### A. The Procurement History

Plaintiff ATI, headquartered in Vienna, Virginia, is a professional services firm providing information technology ("IT") consulting and support services to federal government and commercial customers. ATI is the incumbent contractor for the work called for by the new solicitation and contract. ATI has been performing this work since July 2004, when it took over from DTI, the previous incumbent contractor. ATI's current contract runs from January 1, 2006 through December 31, 2006. ATI has at all times continued to perform the work specified by its contract, and it stands ready, willing and able to continue to do that work. At the present time, however, ATI's current task orders run only through October 31, at which time CBP intends to transition the work to awardee DTI, apparently solely to take advantage of DTI's lower prices. *See* Third Fauser Decl. ¶¶ 2-5, 11, 24, 28.

The contract at issue relates to CBP's data center, located in Springfield, Virginia. The data center is an extensive, mission-critical facility that includes approximately 1,600 pieces of computer equipment at any given time, with frequent additions to and removals of equipment. It is a major undertaking to maintain all of this equipment, manufactured by multiple OEMs, and to do so on a 24/7/365 basis, with a goal of constant 100% availability. Indeed, given the vast array

[1] The Statement of the Case draws upon the Administrative Record filed in the predecessor override action (Fed. Cl. No. 06-599C) and the attached Third Declaration of Paul D. Fauser (Oct. 7, 2006) ("Third Fauser Decl.") (Exhibit 1 hereto).

of equipment, it requires special expertise and effort on the part of the prime contractor simply to keep track of what equipment is present in the center and under maintenance at any given point in time, and what equipment has been retired and removed from the center and, therefore, is no longer in need of maintenance or subject to monthly maintenance charges. *Id.* ¶¶ 3, 6.

Under a predecessor contract, DTI performed the computer hardware maintenance work at issue here up until July 2004, during which time DTI reportedly experienced persistent performance problems. In July 2004, CBP awarded a successor contract to ATI. *Id.* ¶ 7.

When ATI began work under the contract, it found that the records of the current inventory of equipment were in disarray. The records did not reflect significant amounts of equipment that was actually present in the data center and, therefore, in need of ongoing preventive and remedial maintenance to ensure its ongoing availability. At the same time, the records continued to show (and CBP had continued to incur charges under DTI's contract for) significant amounts of equipment that had been removed from the center. ATI brought the situation under control and sufficiently impressed CBP's technical staff that it decided to add substantial new work to the contract. *Id.*

**B. The Solicitation and Its Evaluation Scheme**

CBP's proposed addition of the new work required it to conduct a new procurement. Accordingly, on or about September 30, 2005, CBP issued a request for proposals (RFP No. HSBP10-05-R-0541) for a new and expanded contract for on-site preventive and remedial maintenance of the mainframe computers, storage units, and other peripheral equipment located at the center. *See* Administrative Record ("AR"), Tab 1.

The RFP contemplated the award of a fixed-unit-price, indefinite-delivery/indefinite-quantity ("IDIQ") contract, with a guaranteed minimum of $2,500 worth of orders and annual

ordering ceilings of $9.9 million for each of the base period and four option periods, for a total contract ceiling of $49.5 million. *See* RFP, Amend. 0002, Block 14, ¶ 3 (AR, Tab 3, at 104).

The RFP established the basic ground rules for the procurement. It stated that CBP would award the contract on a "best value" basis, which would be determined through the use of a technical/price trade-off analysis. RFP § A.40, at 37 (AR, Tab 1, at 44). It set forth three evaluation factors, which, in descending order of importance, were stated to be:

- Technical factors [sic]
- Past Performance
- Cost/Price factors [sic]

*Id.*

Thus, the RFP made very clear that CBP was more interested in quality than in price. Indeed, it stated that the technical merits of an offeror's proposal would be "*significantly* more important" than its past performance, and that past performance in turn would be "*significantly* more important" than price. *Id.* (emphasis added). To underscore these priorities, the RFP further stated that:

> [t]he Government is more concerned with obtaining superior technical and performance capability (demonstrated by past performance) than with making an award at the lowest cost or price.

RFP § A.41, at 37 (AR, Tab 1, at 44).

The technical and past performance factors were divided into subfactors. The technical factor was divided into six subfactors, which were worth a total of 730 points, as follows:

| Maximum Point Value | Technical Subfactors |
|---|---|
| 300 | Ensuring constant service availability |
| 150 | Complying with OEM service recommendations |
| 100 | Demonstrated understanding of the Government's requirements |
| 100 | Pertinent qualifications (certifications, etc.) |
| 40 | Process management |
| 40 | Quality Assurance Surveillance Plan |

RFP, Attachment D, "Technical Evaluation Scoring Sheet" (AR, Tab 1, at 95).

Similarly, the past performance factor was divided into three subfactors, which were worth a total of 600 points, as follows:

| Maximum Point Value | Past Performance Subfactors |
|---|---|
| 200 | Offeror ensured constant service availability |
| 200 | Offeror's performance conformed to the terms and conditions of its contract/agreement |
| 200 | Offeror was committed to customer satisfaction |

*Id.* Accordingly, a combined maximum of 1330 points were available.

CBP's evaluation plan was summarized on the technical evaluation scoring sheet referred to above. According to the scoring sheet, the initial technical evaluation was to be performed on an adjectival basis. The adjectival rankings were then to be converted to numeric scores using the point values included on the scoring sheet and shown above. As the last step in the evaluation process, CBP was to sum the numeric scores for all of the technical

and past performance subfactors and calculate an overall percentage score. *Id.* The RFP did not indicate how, if at all, CBP intended to use this percentage score.

**C. The Submission of Proposals and the Ensuing Discussions**

In October 2005, ATI, DTI, and a third offeror submitted proposals in response to the RFP. DTI's price proposal was inordinately higher than the other two proposals, suggesting some sort of fundamental misunderstanding on its part. *See* PNM (Dec. 29, 2005), § F, at 5 (AR, Tab 4, at 109).

In October and November 2005, CBP held oral and written discussions with ATI. In those discussions, CBP raised two perceived weaknesses in ATI's technical proposal, one relating to the constant availability requirement and the other to its program manager's qualifications in the specialized technical area of UNIX software. CBP also advised ATI that its overall score (that is, its combined technical and past performance score) at that point was 83%. *See* Third Fauser Decl. ¶ 9.

Following discussions, ATI and the other two offerors submitted FPRs. *See* PNM at 1 (Dec. 29, 2005) (AR, Tab 4, at 105). In its FPR, ATI fully and adequately addressed the two perceived weaknesses that CBP had identified and explained why they were unfounded. *See* Third Fauser Decl. ¶ 10.

**D. The Initial Award to ATI and DTI's Bid Protests**

In late December 2005, rather than continue interim performance under ATI's existing contract, CBP awarded ATI a new contract. The base period of this contract runs through December 31, 2006; ATI's last delivery order, however, expires at midnight on October 31, 2006. *See* Third Fauser Decl. ¶ 11.

On or about January 10, 2006, DTI filed a bid protest with CBP, in which it challenged the suggested pricing format that CBP had included in the RFP and raised other pricing-related allegations. On January 11, CBP dismissed the protest in part as untimely and denied it in part on the merits. DTI then filed a bid protest at GAO. *See* AR, Tab 6. In response to this protest, CBP decided to take corrective action, as a result of which GAO dismissed the protest as academic. *See Digital Technologies, Inc.*, B-297851 (Mar. 23, 2006) (notice of dismissal) (AR, Tab 11).

**E. The Recompetition**

On March 31, CBP issued a solicitation amendment in which it re-opened the competition and called for the submission of revised price proposals only. *See* RFP, Amend. 0003, at 1 (Mar. 31, 2006) (AR, Tab 12, at 203) ("[r]evised technical proposals will not be accepted"). The amendment provided new pricing formats substantially identical to those that ATI had earlier submitted in response to the solicitation. These formats disclosed valuable pricing information to DTI, along with the identities of OEMs, such as IBM, ViON and Fujitsu, on which ATI was relying in its proposal, as well as the identity of the equipment that each OEM was maintaining. *See id.*, Attach. C[2]; Third Fauser Decl. ¶ 13. Pursuant to these formats, CBP was to evaluate price based on a sample mix of work. *See* AR, Tab 12, at 204 (¶ a).

On April 6, CBP issued a further amendment in which it disclosed the three offerors' overall percentage scores (*i.e.,* each offeror's *combined* technical and past performance score). The amendment indicated that Offeror 1 had received a combined score of 85%; Offeror 2 had received a combined score of 76%; and Offeror 3 had received a combined score of just 49%.

---

2 Tab 12 of the Administrative Record, as filed in the override case, does not include spreadsheets that were attached to the basic amendment itself.

*See* RFP, Amend. 0004, at 2 (Apr. 6, 2006) (AR, Tab 13, at 211). The amendment also disclosed ATI's proposed pricing, line-item by line-item. *See id.* at 3 (AR, Tab 13, at 212); Third Fauser Decl. ¶ 14.

On April 11, ATI duly submitted a revised price proposal. *See generally* PNM at 2-8 (AR, Tab 16, at 227-33).[3]

**F. The Post-FPR Discussions**

On June 15, 2006, CBP's contracting officer sent letters to ATI and DTI requesting copies of their agreements with OEMs. *See* PNM at 8 (AR, Tab 16, at 233). ATI's December 1, 2005 FPR had stated that a key OEM, Fujitsu, was bound to work exclusively with ATI. *See* Third Fauser Decl. ¶ 16. Hence, it seems that the specific, though unstated, purpose of CBP's request was to determine whether DTI in fact would be able to use Fujitsu if CBP awarded the contract to DTI. *See* PNM at 8 (AR, Tab 16, at 233). The letter to ATI makes clear that CBP sought this information from DTI only because DTI's proposed pricing, as revised and submitted in the April round of FPRs, was lower than ATI's proposed pricing. *See* CBP OEM Letter to ATI (June 15, 2006) (Exhibit 2 hereto) ("*Since the submission of revised price proposals has resulted in a shift in the relative pricing position of offerors*, it will be necessary for all offerors that cited such OEM agreements to submit copies of the OEM agreements to the Government for verification") (emphasis added).

---

3 The Administrative Record in the override case indicates that the contracting officer initially completed and signed the PNM for the re-opened competition on June 28, 2006. *See* AR, Tab 14. Agency counsel thereafter provided comments for incorporation into the PNM before the actual award. The contracting officer incorporated those comments, which pertain only to the third offeror, and re-signed the PNM on August 15, 2006. *See* AR, Tab 16.

DTI responded by supplying a letter indicating that Fujitsu was prepared to enter into an agreement with DTI. *See* PNM at 8 (AR, Tab 16, at 233). ATI responded by restating that Fujitsu was bound to work exclusively with ATI and enclosed a copy of its exclusive teaming agreement with Fujitsu. *See* Third Fauser Decl. ¶ 16.

**G. The Award to DTI and Its Cost-Savings Rationale**

On Friday, August 4, 2006, CBP notified ATI that it had awarded a contract to DTI. ATI later learned that CBP had awarded the contract on or about July 26. *See* Third Fauser Decl. ¶ 17; FedBizOps Notice of Award (AR, Tab 15, at 223).

On Monday, August 7, ATI timely requested a debriefing from CBP, which CBP's contracting officer supplied in written form later that day. *See* Third Fauser Decl. ¶ 18. The debriefing letter, little more than a single page long, indicated that ATI's combined technical and past performance score was 85%, while DTI's combined score was just 76% (representing a difference of almost 12%). The debriefing letter did not disclose or discuss the separate technical scores or past performance scores underlying the combined scores. *See* CBP Debriefing Letter to ATI (Aug. 7, 2006) (Exhibit 3 hereto).

The debriefing letter also indicated that ATI's evaluated price for the sample tasks was approximately $46.6 million, while DTI's evaluated price was approximately $39.7 million (representing a difference of about 17%). *Id.*

Despite the RFP's emphasis on technical merit and past performance, CBP's debriefing letter explained the tradeoff decision in a single sentence, as follows:

> In this instance, the difference in price was simply too great to overcome given the comparatively small difference in technical/past performance scores.

*Id.* at 2. The debriefing letter provided no further explanation of the tradeoff analysis or source selection decision, or of the basis for concluding that the differences between the proposals

were comparatively small. The letter closed by thanking ATI for participating in the procurement and expressing the hope that the debriefing would assist ATI "in future competitions." *Id.*

Despite recognizing that ATI's technical proposal offered "a long list of advantages and benefits," CBP's price negotiation memorandum, authored by the contracting officer, provided a similarly short and conclusory explanation for the decision to select DTI, stating in relevant part as follows:

> *CBP is unwilling to pay 17% more than DTI's offered price* to obtain a 9 percentage point increase in technical [sic] scoring, particularly when DTI has provided this service to CBP in the past at an *acceptable level of performance.*

PNM at 8 (AR, Tab 16, at 233) (emphasis added). Although referring to a "9 percentage point increase in technical scoring," the PNM actually referred to the offerors' *combined* technical and past performance scores. It failed to consider or even break out the separate technical and past performance scores underlying the combined scores. *See generally id.* at 6-8. The PNM also failed to set forth the requisite "comparative assessment of proposals against all source selection criteria in the solicitation." FAR 15.308.

**H. ATI's GAO Bid Protest and the COFC Override Action**

On Friday, August 11, ATI filed a post-award bid protest at GAO challenging the award to DTI and requesting that CBP suspend contract performance pursuant to the automatic stay provision of CICA. GAO notified CBP of the protest later that same day, thereby triggering the automatic stay. *See generally Automation Technologies, Inc. v. United States*, No. 06-599C, slip op. (Fed. Cl. unsealed order issued Sept. 21, 2006).

In its GAO protest (No. B-298618), ATI challenged CBP's failure to perform a proper technical/price tradeoff analysis (effectively converting the procurement into a technically-

acceptable, lowest-cost procurement) and its flawed evaluations of the offerors' technical proposals and past performance. *See* Third Fauser Decl. ¶ 21.

On or about August 17, CBP overrode the CICA stay, citing cost savings as its only rationale for doing so. *See* AR, Tab 17, at 2 (override memorandum prepared by contracting officer) ("[r]esumption of contract performance [by DTI] will result in significant savings to the Government"). Plaintiff ATI challenged the override in this Court. Ruling from the bench on August 31, the Court declared the override invalid and set it aside. *See generally Automation Technologies*, No. 06-599C (Fed. Cl. unsealed order issued Sept. 21, 2006).

**I. GAO's Dismissal of ATI's Protest and ATI's Request for Reconsideration**

On September 6, GAO dismissed ATI's underlying bid protest on the ground that ATI, having already received an award under the RFP, could not have been legally prejudiced by the subsequent award to DTI. On September 12, ATI timely filed a request for reconsideration at GAO (No. B-298618.3). At the request of ATI, GAO processed the request for reconsideration on an expedited basis. On October 4, GAO issued a decision denying the request, again on the ground that ATI had received an award as well as delivery orders for more than the guaranteed minimum of $2,500 worth of work, which, in GAO's view, precluded a finding of legally cognizable prejudice. *See* Third Fauser Decl. ¶ 23.

**J. The Agency's Upcoming Transition to DTI**

Although ATI is currently performing as the incumbent contractor for the work, ATI's current delivery order expires at the end of October. According to its submissions to GAO, CBP does not intend to issue any further delivery orders to ATI or exercise any of the options in ATI's contract. Instead, CBP intends to transition the work to DTI at that time and to use DTI exclusively from that time on. *See* Third Fauser Decl. ¶ 24.

If ATI is forced to discontinue performance and terminate its contracts with its OEM partners, its reputation and relationships with them will suffer, it will lose its legitimate competitive advantage as the incumbent in any recompetition that this Court may order, DTI will gain an undue competitive advantage as the new incumbent in any recompetition, and ATI will lose profits during any interruption of its performance. *See* Third Fauser Decl. ¶ 25, 27. Also, ATI could lose its CBP data center project manager, who is a valuable asset to ATI, especially in connection with the CBP contract. If ATI were to lose him, he would be unavailable to ATI in any recompetition that the Court might order as a result of this bid protest, and it would otherwise diminish ATI's ability to compete for IT contracts. *Id.* ¶ 26. ATI does not have an adequate remedy at law for any of these injuries.

## ARGUMENT

### I. UNDER THE TRADITIONAL FOUR-PART TEST, PLAINTIFF ATI IS ENTITLED TO A PRELIMINARY INJUNCTION TO PREVENT THE PROCURING AGENCY FROM TRANSITIONING CONTRACT PERFORMANCE TO AWARDEE DTI

In determining whether to grant plaintiff ATI temporary and preliminary injunctive relief, the Court must consider four factors:

(1) whether ATI is likely to prevail on the merits;

(2) whether ATI is likely to suffer irreparable harm absent temporary and preliminary injunctive relief;

(3) whether granting such relief would substantially harm the government or any other parties;

(4) whether granting such relief would serve the public interest.

*Zenith Radio v. United States,* 710 F.2d 806, 809 (Fed. Cir. 1983); *Delbert Wheeler Constr., Inc. v. United States,* 39 Fed. Cl. 239, 251 (1997), *aff'd,* 155 F.3d 566 (Fed. Cir. 1997).

No one factor is dispositive, as any weakness in the showing with respect to one factor may be overborne by the strength of others. *FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993).

### A. Plaintiff ATI Is Likely to Prevail on the Merits of This Bid Protest Case

Plaintiff ATI is likely to prevail on the merits of its claims that the procuring agency's source selection decision and its underlying evaluation of technical proposals were arbitrary, capricious, or otherwise not in accordance with law.

In order to prevail in a bid protest case, the protestor must show by a preponderance of the evidence that the agency's actions were either without a rational basis or in violation of applicable procurement law. *See, e.g., Avtel Servs., Inc. v. United States*, 70 Fed. Cl. 173, 183-84 (2005). Under the foregoing standards, CBP's source selection decision, as well as its underlying technical evaluations, do not pass muster.

#### 1. CBP's Source Selection Decision Violates Procurement Law and Procedure

The most obvious flaw in this procurement is CBP's failure to properly conduct or adequately document a tradeoff analysis, which effectively converted this best value procurement, which the RFP heavily weighted in favor of excellence in the technical and past performance areas, into a technically-acceptable, lowest-cost procurement. This error alone is so fundamental that it justifies a ruling in favor of plaintiff ATI, even apart from the serious evaluation errors described below.

##### a. In Violation of FAR 15.308, CBP Failed to Perform or Document a Proper Technical/Price Tradeoff Analysis

The contracting officer's source selection decision here is reflected in the price negotiation memorandum. *See* AR, Tab 14, at 221 (PNM signed in June); *id.*, Tab 16, at 233

(PNM signed in August). After briefly referring to the evaluation board's "long list of advantages and benefits" of ATI's proposal and alluding to DTI's OEM letter, the contracting officer announces his conclusion in a single sentence:

> Regardless, CBP is unwilling to pay 17% more than DTI's offered price to obtain a 9 percentage point increase in technical [sic] scoring, particularly when DTI has provided this service to CBP in the past at an *acceptable* level of performance.

*Id.* (emphasis added).

As an initial matter, this conclusion incorrectly refers to the 9-percentage-point (or 12%) difference as the difference in the "technical" scoring, as distinguished from the combined technical and past performance scoring. Moreover, it fails to consider the separate, underlying technical and past performance scores, even though the technical scores, representing the single most important evaluation factor, may well show an even greater difference than the combined scores.

Even putting aside those errors, the contracting officer's conclusion violates FAR 15.308 for two reasons:

> (1) he did not engage in a comparative assessment of the proposals against the technical and past performance evaluation factors set forth in the RFP; and
>
> (2) he did not document the rationale for his business judgments and tradeoffs.

*Cf. Information Sciences Corp. v. United States*, No. 05-1342C, slip op. at 68 (Fed. Cl. Sept. 19, 2006) (setting forth and highlighting the three requirements imposed on source selection officials by FAR 15.308).[4]

---

[4] FAR 15.308 provides as follows:

*(cont'd . . .)*

Although *Information Sciences* permits a source selection official to rely on a "detailed," factor-by-factor, subfactor-by-subfactor, comparative assessment performed by agency evaluators (as long as the selection official exercises independent judgment in doing so) (*id.*, slip op. at 70), there is nothing in the PNM here or elsewhere in the record before this Court to indicate, let alone document, that CBP's evaluators conducted such an assessment on their own or that CBP's contracting officer relied on any such assessment.

A comparative assessment that considers all of the stated evaluation criteria is a fundamental requirement of the FAR. The failure to make or document such an assessment cannot be excused as being too difficult, especially where, as here, the agency encouraged the offerors to compete on the basis of technical superiority. *See Preferred Systems Solutions, Inc.,* B-292322, Aug. 25, 2003, 2003 CPD ¶ 166, at 11. In such circumstances, it is improper for the agency to select a lower-rated technical proposal without adequately documenting the rationale for rejecting the higher-rated proposal:

> Where cost is secondary to technical considerations under a solicitation's evaluation scheme, . . . the selection of a lower-priced proposal over a proposal with a higher technical rating requires an adequate justification . . . . *Where there is inadequate supporting rationale in the record for a decision to select a lower-priced proposal with a lower technical ranking notwithstanding a solicitation's emphasis on technical factors, we cannot conclude that the agency had a reasonable basis for its decision.*

---

*(. . . . cont'd)*

> The source selection authority's (SSA) decision shall be based on a *comparative assessment of proposals against all source selection criteria* in the solicitation. While the SSA may use reports and analyses prepared by others, the source selection decision shall represent the SSA's independent judgment. *The source selection decision shall be documented, and the documentation shall include the rationale for any business judgments and tradeoffs made or relied on by the SSA*, including benefits associated with additional costs. Although the rationale for the selection decision must be documented, that documentation need not quantify the tradeoffs that led to the decision. [Emphasis added.]

*Id.* at 7 (emphasis added).

As in *Preferred Systems,* where the source selection official simply concluded without explanation that the competing proposals had "nearly equivalent ratings in non-cost areas," CBP's conclusory statement in the PNM here, quoted above, "fall[s] far short of the requirement to justify cost/technical tradeoff decisions." *Preferred Systems*, 2003 CPD ¶ 166, at 7.

**b. In Violation of 41 U.S.C. § 253a, CBP Unreasonably Treated the Proposals as Essentially Equal and Thereby Converted the Procurement into a Technically-Acceptable, Lowest-Cost Competition**

Absent a proper tradeoff analysis in accordance with the FAR, what we are left with is effectively a decision by CBP's contracting officer, notwithstanding the "long list of advantages and benefits" of ATI's proposal, to treat the two competing proposals as essentially equal under the technical and past performance factors. Absent any justification for this decision (and the PNM provides none), it represents a departure from the stated evaluation criteria, in violation of 41 U.S.C. § 253a(b) and (c). By departing from those criteria, the contracting officer converted the procurement into one based on technical acceptability and low cost, instead of one based on superiority in the technical and past performance areas, as the RFP had announced. This was improper.

It is axiomatic, of course, that:

> an agency does not have the discretion to announce in the solicitation that it will use one evaluation plan, and then follow another; once offerors are informed of the criteria against which their proposals will be evaluated, the agency must adhere to those criteria in evaluating proposals and making its award decision, or inform all offerors of any significant changes made in the evaluation scheme.

*Preferred Systems,* 2003 CPD ¶ 166, at 10. In that case, the source selection official deemed two proposals essentially equal and selected the lower-priced proposal. As the rationale, the source

selection official stated only that "[d]ue to the nearly equivalent ratings in the non-cost areas, the cost[s] proposed and evaluated took on greater weight in the best value analysis." *Id.* Because the ratings there were not in fact equivalent, GAO found that cost had impermissibly become the predominant basis for award. *See generally id.* at 6-11.

Here, the language of CBP's PNM is substantively indistinguishable from the deficient language of the justification proffered in *Preferred Systems.* Like the source selection official there, CBP's contracting officer here failed to meaningfully consider the differences between the competing proposals. By failing to do so, he departed from the stated evaluation weights and source selection criteria.

Significantly, under the RFP, the technical evaluation factor was weighted not just as "more important" than the past performance factor, but as "significantly" more important than past performance, which itself was weighted as "significantly" more important than price. *See* RFP § A.40, at 37 (AR, Tab 1, at 44). Hence, CBP's solicitation clearly sought a high degree of technical superiority, and it induced ATI to propose accordingly. *See* RFP § A.41, at 37 (AR, Tab 1, at 44). It was improper, therefore, for CBP to summarily reject ATI's higher-rated technical proposal based on its moderately higher price. *See, e.g., DLI Eng'g Corp.,* B-218335, June 28, 1985, 85-1 CPD ¶ 742, at 5-9; *see also TMC, Inc.,* B-230078, May 24, 1988, 88-1 CPD ¶ 492, at 2 (improper to switch from evaluation scheme making technical considerations four times more important than price to lowest-cost acceptable scheme without giving offerors advance notice).

#### c. Had CBP Performed a Proper Tradeoff Analysis Consistent with the Evaluation and Source Selection Criteria, It Most Likely Would Not Have Awarded the Contract to DTI

CBP's failure to properly perform or adequately document a technical/price tradeoff

analysis, and its departure from the announced evaluation criteria, were prejudicial to ATI. A proper tradeoff analysis, made in light of the differences in technical and past performance scores and the heavy weighting of the technical evaluation factor over past performance, and past performance over price, would have shown that ATI's only moderately more expensive proposal represents the best value in this procurement.

### 2. CBP Misevaluated the Technical Proposals

#### a. CBP Unreasonably Failed to Give ATI Credit for Its Responses to the Perceived Weaknesses in the Areas of Constant Availability and the Program Manager's Qualifications

In the discussions held in the fall of 2005, CBP identified two perceived weaknesses in ATI's proposal. They related to the constant availability requirement and the UNIX software experience of ATI's program manager. In its FPR, ATI specifically and fully addressed these perceived weaknesses. *See* Third Fauser Decl. ¶¶ 9-10. Indeed, it appears that CBP came to the same conclusion, because its debriefing letter made no mention of any significant weaknesses or deficiencies, even though FAR 15.506(d) required CBP to identify any such weaknesses or deficiencies in the debriefing. *See* Ex. 3. Yet, CBP made little or no adjustment in ATI's scoring, since ATI's combined score was 83% before the discussions and just 85% afterwards. This was unreasonable. *See* Third Fauser Decl. ¶¶ 9, 18; AR, Tab 16, at 231.

CBP's failure to revise ATI's technical score upwards to reflect ATI's responses prejudiced ATI, because a higher technical score would have reduced DTI's chances of obtaining the award. *See, e.g., Gemmo Impianti, S.p.A.,* B-290427, Aug. 9, 2002, 2002 CPD ¶ 146, at 6 (misevaluation of technical factor taints the subsequent technical/cost tradeoff analysis).

**b. CBP Unreasonably Failed to Downgrade DTI for Its Inadequate Understanding of CBP's Maintenance Requirements**

CBP unreasonably failed to downgrade DTI's technical proposal for its inadequate understanding of CBP's hardware maintenance requirements (one of the six technical evaluation subfactors), as reflected in DTI's unrealistically low pricing, particularly for CLIN 0002, which involves certain mainframe computers, and CLIN 0010, which involves certain direct-access storage devices on which CBP is placing increasing reliance. *Compare* PNM at 4 *with id.* at 5 (AR, Tab 16, at 229-30). Both of these categories of equipment are mission-critical. Hence, any failure to properly carry out preventive or remedial maintenance would jeopardize their availability and, thus, CBP's ability to carry out its mission.

Where an agency contemplates awarding a fixed-price contract, it may evaluate the price realism of an offeror's proposal for the purpose of measuring the offeror's understanding of the solicitation's technical requirements or to assess the risk inherent in the offeror's approach. *See, e.g., Simmonds Precision Prods., Inc.*, B-244559.3, June 23, 1993, 1993 WL 239120, at *11. Had CBP performed such an analysis here, it should have downgraded DTI's technical proposal on both counts.

DTI's unrealistically low pricing implicates two of the technical subfactors: (i) ensuring constant availability; and (ii) demonstrated understanding of the Government's requirements. Taken together, these two subfactors account for 400 of the 730 possible point scores under the technical factor, or well more than half of the maximum possible technical score. In these circumstances, ATI can only conclude that CBP failed to sufficiently downgrade DTI's technical proposal to properly reflect the risks of DTI's limited understanding of CBP's requirements and the resulting risk to constant availability.

CBP's evident failure to consider DTI's unrealistic pricing has prejudiced ATI. Had CBP properly considered this item and downgraded DTI's technical score to adequately reflect it, the differences between ATI's and DTI's technical scores would have been even more pronounced, and ATI's chances of winning the award, already reasonably good, would have been even better.

### B. Absent Preliminary Injunctive Relief, Plaintiff ATI Will Suffer Irreparable Harm

The second factor the Court must consider before awarding preliminary injunctive relief is whether the plaintiff will suffer irreparable harm in the absence of injunctive relief. *See, e.g., PGBA, LLC v. United States*, 389 F.3d 1219, 1229 (Fed. Cir. 2004). Irreparable harm is harm for which the plaintiff has no other adequate remedy. *See, e.g., Information Sciences*, slip op. at 81 ("[w]hen assessing irreparable injury, the relevant inquiry in weighing this factor is whether the protesters have an adequate remedy, in the absence of an injunction") (citing *OTI America, Inc. v. United States,* 68 Fed. Cl. 646, 659 (2005); *Overstreet Elec. Co., Inc. v. United States*, 47 Fed. Cl. 728, 743 (2000)).

This Court has held that a protestor suffers irreparable injury when it has been deprived of the opportunity to compete with other offerors on a level playing field, which no legal remedy can adequately redress. *See Information Sciences*, slip op. at 81 (citing, *inter alia, Cardinal Maint. Serv., Inc. v. United States*, 63 Fed. Cl. 98, 110 (2004)); *see also SAI Indus. v. United States*, 60 Fed. Cl. 731, 747 (2004) ("Irreparable injury can be shown in the form of lost opportunity to fairly compete for and perform work under the contract, including but not limited to lost profits that would generate therefrom.") (citation and internal quotation omitted).

Potential loss of work, however, is not the only cognizable harm. There is also the competitive harm to the protestor, both from losing its legitimate competitive advantage as the incumbent and from the competitive advantage that the awardee, by proceeding to perform the

new contract, may gain in the event of a recompetition. *See CIGNA Gov't Servs., LLC v. United States*, 70 Fed. Cl. 100, 101-02 (2006).

Here, ATI faces the prospect of substantial injury not only in the form of a lost opportunity to compete for the contract on a level playing field but also the incumbency advantage that DTI will gain if CBP is allowed to transition the work at the beginning of November. Absent injunctive relief, plaintiff ATI will be required at that time to wind down its operations at the data center, transition the work to DTI, break off its contractual relationships with its OEM partners, and lose its legitimate incumbency advantage (as well as the profits it would otherwise earn). ATI also could lose its data center project manager, a significant disadvantage in any recompetition. *See* Third Fauser Decl. ¶¶ 25-26. At the same time, by installing itself in the data center (assuming it can comply with the contract's substantial security requirements in time), DTI will gain an unearned incumbency advantage for any recompetition resulting from this protest. *Id.* ¶ 27. This will skew the playing field. *Cf. CIGNA*, 70 Fed. Cl. at 112 ("[a]llowing the awardees to continue with performance could skew the playing field if GAO were to order a reopening of the procurement, thus compromising competition").

### C. The Balance of Hardships Tilts in Favor of Plaintiff ATI

The third consideration for the Court is the balance of hardships. *See, e.g., Information Sciences*, slip op. at 82 (citing *PGBA*, 389 F.3d at 1229). Here, the harm to plaintiff ATI easily outweighs any harm to CBP. As in the preceding override case, injunctive relief will have no effect on CBP's data center. There is no question about ATI's ability to provide the services or about the possibility of any interruption in services. ATI has continued to provide the services, on a 24/7/365 basis, and is ready, willing and able to continue doing so for as long as necessary to resolve this protest. In fact, given the background investigation requirement and backlog at

CBP, it appears that any attempt to transition to DTI presents the most significant risk of interruptions in service. *See* Third Fauser Decl. ¶ 5, 28.

Thus, the only potential harm to CBP is having to forgo the cost savings that it might realize by transitioning the work to DTI. But those savings are not huge. And, by heavily weighting the procurement in favor of technical excellence, CBP declared that it was ready to pay more for technical excellence.

Accordingly, the balance of hardships tilts in ATI's favor here.

### D. Preliminary Injunctive Relief Will Serve the Public's Interest in Proper Enforcement of Procurement Laws

The final consideration is whether injunctive relief is in the public interest. *See, e.g.*, *Information Sciences*, slip op. at 82 (citing *PGBA*, 389 F.3d at 1229). It is well-established that the public interest is served by requiring government officials to follow procurement statutes and regulations. *Id.* (citing *LABAT-Anderson, Inc. v. United States*, 65 Fed. Cl. 570, 581 (2005)) (other citations omitted). Here, given the mission-critical nature of CBP's data center, the public interest is especially well-served by ensuring that the ultimate awardee represents the "best value" under the evaluation and source selection factors set forth in the RFP.

The public interest will also be served by avoiding an unnecessary transition in service providers and the associated potential for interruptions in service during the pendency of this protest, and then another transition, should ATI prevail.

## CONCLUSION AND RELIEF REQUESTED

Because the procuring agency's decision to award the contract to DTI resulted from an unlawful source selection decision and unreasonable evaluations of the offerors' proposals, plaintiff ATI is likely to prevail on the merits. Absent injunctive relief pending a final decision

on the merits, ATI will suffer irreparable harm when the procuring agency transitions the work to DTI at the beginning of next month.

In contrast, preliminary injunctive relief would cause little if any harm to the government, other than forgoing the relatively small cost savings that drove the agency to disregard the "best value" nature of the procurement. Significantly, ATI is performing the computer maintenance work now and is ready, willing and able to continue performing it.

Accordingly, ATI requests that this Court issue a preliminary injunction prohibiting the procuring agency, CBP, from transitioning the work to DTI pending the final resolution of this case on the merits.

Dated: October 7, 2006

Respectfully submitted,

s/Walter F. Zenner
Walter F. Zenner
PILLSBURY WINTHROP
SHAW PITTMAN LLP
1650 Tysons Boulevard
McLean, Virginia 22102
Tel: (703) 770-7603
Fax: (703) 770-7901

*Counsel of Record for Plaintiff Automation Technologies, Inc.*

*Of Counsel:*

John E. Jensen
Orest J. Jowyk
PILLSBURY WINTHROP
SHAW PITTMAN LLP
1650 Tysons Boulevard
McLean, Virginia 22102
Tel: (703) 770-7900