**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
(Electronically Filed on October 7, 2006)

| | | |
|---|---|---|
| AUTOMATION TECHNOLOGIES, INC., | ) | |
| Plaintiff, | ) | No. 06-694C |
| v. | ) | (Judge Horn) |
| UNITED STATES, | ) | |
| Defendant. | ) | BID PROTEST |

# APPENDIX OF EXHIBITS

**TO**

**PLAINTIFF AUTOMATION TECHNOLOGIES, INC.'S MEMORANDUM IN SUPPORT OF ITS PROTECTIVE MOTION FOR A PRELIMINARY INJUNCTION TO PREVENT TRANSITIONING CONTRACT PERFORMANCE TO AWARDEE DIGITAL TECHNOLOGIES, INC.**

Walter F. Zenner
PILLSBURY WINTHROP
SHAW PITTMAN LLP
1650 Tysons Boulevard
McLean, Virginia 22102
Tel: (703) 770-7603
Fax: (703) 770-7901

*Counsel of Record for Plaintiff Automation Technologies, Inc.*

*Of Counsel:*

John E. Jensen
Orest J. Jowyk
PILLSBURY WINTHROP
SHAW PITTMAN LLP
1650 Tysons Boulevard
McLean, Virginia 22102
Tel: (703) 770-7900

Dated: October 7, 2006

# INDEX OF EXHIBITS

1. Third Declaration of Paul D. Fauser (Oct. 7, 2006)

2. CBP OEM Letter to ATI (June 15, 2006)

3. CBP Debriefing Letter to ATI (Aug. 7, 2006)

# EXHIBIT 1

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
(Electronically Filed on October 7, 2006)

| | | |
|---|---|---|
| AUTOMATION TECHNOLOGIES, INC., | ) | |
| Plaintiff, | ) | No. 06-694C |
| v. | ) | (Judge Horn) |
| UNITED STATES, | ) | |
| Defendant. | ) | BID PROTEST |

**THIRD DECLARATION OF PAUL D. FAUSER**

I, Paul D. Fauser, pursuant to 28 U.S.C. § 1746, state as follows:

1. I am the Senior Vice President, Programs, for Automation Technologies, Inc. ("ATI"). I have been employed by ATI since January 2000. I am responsible for the oversight and direction of technical programs for the company.

2. Headquartered in Vienna, Virginia, ATI is a professional services firm that provides information technology ("IT") consulting and support services to federal government and commercial customers.

3. ATI is the incumbent contractor for the work called for by the new contract at issue in this bid protest case. The new contract, awarded to Digital Technologies, Inc. ("DTI") and valued at up to $49.5 million over five years, calls for the performance of ongoing information technology ("IT") hardware maintenance services at a large, mission-critical data center operated by the Department of Homeland Security, Bureau of Customs and Border Protection ("CBP").

4. ATI has been performing that work since July 2004, when we took over from DTI, the previous incumbent contractor up until July 2004 and now the awardee under the new contract.

5. CBP intends to transition the work from ATI to DTI at the end of October, when ATI's current delivery order expires. I submit this declaration in support of ATI's motion for a preliminary injunction, which seeks to prevent that transition pending the Court's decision on the merits of this case. ATI has at all times continued to perform the work specified by its contract, and it stands ready, willing and able to continue performing that work pending the Court's decision in this case and any subsequent recompetition.

**A. The Nature and History of the Procurement**

6. CBP's data center, located in Springfield, Virginia, is an extensive, mission-critical facility that includes approximately 1,600 pieces of computer equipment at any given time, with frequent additions to and removals of equipment. It is a major undertaking to maintain all of this equipment, manufactured by multiple OEMs, and to do so on a 24/7/365 basis, with a goal of constant 100% availability, as ATI presently does. Indeed, given the vast array of equipment, it requires special expertise and effort on the part of the prime contractor simply to keep track of what equipment is present in the center and under maintenance at any given point in time, and what equipment has been retired and removed from the center and, therefore, is no longer in need of maintenance or subject to monthly maintenance charges.

7. Under a predecessor contract, DTI performed the computer hardware maintenance work at issue here up until July 2004, during which time DTI reportedly experienced persistent performance problems. In July 2004, CBP awarded a successor contract to ATI. When ATI began work under the contract, it found that the records of the current inventory of equipment

were in disarray. The records did not reflect significant amounts of equipment that were actually present in the data center and, therefore, in need of ongoing preventive and remedial maintenance to ensure its ongoing availability. At the same time, the records continued to show (and CBP had continued to incur charges under DTI's contract for) significant amounts of equipment that had been removed from the center. ATI brought the situation under control and sufficiently impressed CBP that it decided to add substantial new work to the contract. The proposed addition of the new work required CBP to conduct a new procurement.

**B. The Solicitation and Initial Contract Award to ATI**

8. On or about September 30, 2005, CBP issued a request for proposals (RFP No. HSBP10-05-R-0541) for a new and expanded contract for on-site preventive and remedial maintenance of the mainframe computers, storage units, and other peripheral equipment located at the data center. In October 2005, ATI and apparently two other offerors submitted proposals in response to the RFP.

9. In October and November 2005, CBP held oral and written discussions with ATI. In those discussions, CBP identified two perceived weaknesses in ATI's technical proposal, one relating to the RFP's constant availability requirement and the other to the qualifications of ATI's program manager in the specialized technical area of UNIX software. CBP also advised ATI that its overall score (that is, its combined technical and past performance score) at that point was 83%.

10. ATI submitted an FPR by the due date of December 1. In the FPR, we fully and adequately addressed the two perceived weaknesses that CBP had identified and demonstrated that CBP's concerns were unfounded.

11. In late December 2005, rather than continue interim performance under ATI's existing contract, CBP awarded ATI a new contract. The base period of this contract runs through December 31, 2006; ATI's last delivery order, however, expires at midnight on October 31, 2006.

## C. DTI's Bid Protests and the Resulting Recompetition

12. Following the award, DTI filed bid protests at CBP and then at GAO, where it apparently raised pricing-related allegations. Apparently as a result of the GAO bid protest, CBP decided to take corrective action that included re-opening the competition.

13. On March 31, CBP issued a solicitation amendment in which it re-opened the competition and called for the submission of revised price proposals only. The amendment provided new pricing formats substantially identical to those that ATI had submitted as part of its price proposal in response to the original solicitation. These formats, which were contained in spreadsheets attached to the amendment, disclosed valuable pricing information to DTI, along with the identities of OEMs, such as IBM, ViON and Fujitsu, on which ATI was relying in its proposal, as well as the identity of the equipment that each OEM was maintaining.

14. On April 6, CBP issued a further amendment in which it disclosed the three offerors' overall percentage scores. Effectively, this amendment informed DTI that ATI's overall score was 85%. The amendment also disclosed ATI's proposed pricing, line-item by line-item.

15. On April 11, ATI submitted a revised price proposal.

## D. The Agency's Post-FPR Request for OEM Agreements

16. On June 15, 2006, CBP's contracting officer sent a letter to ATI requesting copies of our agreements with OEMs. In our FPR of December 1, 2005, we had stated that we had an

exclusive teaming agreement with Fujitsu, a key OEM. Accordingly, in our response to the contracting officer's letter, we again noted that we had an exclusive teaming agreement with Fujitsu and we enclosed a copy of that agreement.

**E. The Award to DTI and ATI's Subsequent Debriefing**

17. On Friday, August 4, 2006, CBP notified ATI that it had awarded a contract to DTI. ATI later learned that CBP had awarded the contract on or about July 26.

18. On Monday, August 7, ATI requested a debriefing from CBP, which CBP supplied in written form later that day. The debriefing indicated that ATI's combined technical and past performance score was 85%, while DTI's combined score was just 76% (representing a difference of almost 12%). The debriefing also indicated that ATI's evaluated price for the sample tasks was approximately $46.6 million, while DTI's evaluated price was approximately $39.7 million (representing a difference of about 17%). The debriefing letter explained the tradeoff decision as follows:

> In this instance, the difference in price was simply too great to overcome given the comparatively small difference in technical/past performance scores.

**F. DTI's Unrealistically Low Pricing**

19. In comparing ATI's proposed pricing with DTI's awarded pricing under the new contract (as disclosed by CBP following the award), I could not help but note that DTI's pricing was unrealistically low for two line items. These are CLIN 0002, which involves certain mainframe computers, and CLIN 0010, which involves certain direct-access storage devices on which CBP is placing increasing reliance. Both of these categories of equipment are mission-critical. Hence, any failure to properly carry out preventive or remedial maintenance would jeopardize their availability and, thus, CBP's ability to carry out its mission. In my view,

DTI's pricing is so low as to call into question its understanding of CBP's maintenance requirements.

**G. ATI's GAO Bid Protest and COFC Override Action**

20. On Friday, August 11, ATI filed a post-award bid protest at GAO challenging the award to DTI and requesting that CBP suspend contract performance pursuant to the automatic stay provision of CICA. I understand that GAO notified CBP of the protest later that same day, and that that notification triggered the automatic stay.

21. In our GAO protest, ATI challenged CBP's failure to perform a proper technical/price tradeoff analysis (effectively converting the procurement into a technically-acceptable, lowest-cost competition) and its flawed evaluations of the offerors' technical proposals and past performance.

22. On or about August 17, CBP overrode the CICA stay, citing cost savings as its only rationale for doing so. ATI challenged the override in this Court. I was present in the courtroom on August 31, when the Court issued its decision declaring the override invalid and setting it aside.

**H. GAO's Dismissal of ATI's Protest and ATI's Request for Reconsideration**

23. I understand that on September 6, GAO dismissed ATI's bid protest on the ground that ATI, having already received an award under the RFP, could not have been legally prejudiced by the subsequent award to DTI. I also understand that on September 12, ATI timely filed a request for reconsideration at GAO (No. B-298618.3), and that, at the request of ATI, GAO processed the request for reconsideration on an expedited basis. I further understand that on October 4, GAO issued a decision denying the request, again on the ground that ATI had

received an award as well as delivery orders for more than the guaranteed minimum of $2,500 worth of work, which, in GAO's view, precluded a finding of legally cognizable prejudice.

**I. The Agency's Upcoming Transition to DTI**

24. Although ATI is currently performing as the incumbent contractor for the work, ATI's current delivery order expires at the end of October. At that time, CBP intends to transition the work to DTI and to use DTI, and only DTI, to perform the work going forward. This has been confirmed in my conversations with the contracting officer's technical representative ("COTR") on September 7 and 8, 2006, in which he stated that the contracting officer intended to award all of the work to DTI effective November 1 and to use only DTI for future requirements. This is in keeping with the basic "winner-take-all" nature of the contract, as is consistent with the history of this work over the past ten years and with the understanding of CBP data center technical staff with respect to the present procurement.

**J. Irreparable Injury to ATI**

25. If CBP proceeds with its planned transition to DTI on November 1, ATI will be forced to discontinue performance, wind down its operations at the data center, and terminate its contracts with its OEM partners, harming our reputation and relationships with them. We will lose our competitive advantage as the incumbent in any recompetition that this Court may order as a result of this bid protest. We will also lose profits in the meantime.

26. Additionally, if the transition takes place, ATI could lose its CBP data center project manager, who is a valuable asset to ATI, especially in connection with the CBP contract. If ATI were to lose him, he would be unavailable to ATI in any recompetition that the Court might order as a result of this bid protest, and it would otherwise diminish ATI's ability to compete for IT contracts.

27. At the same time, once DTI installs itself in the data center (assuming that it can comply with the contract's security requirements in time), it will gain a competitive advantage as the new incumbent in any recompetition, along with the advantage of having existing relationships with its OEMs in place at the time of such a recompetition.

28. As in the preceding override case, injunctive relief would have no effect on CBP's data center operations. There is no question about ATI's ability to provide the services or about the possibility of any interruption in services. ATI has continued to provide the services, on a 24/7/365 basis, and is ready, willing and able to continue doing so for as long as necessary to resolve this protest and to accomplish any resulting recompetition. In fact, given the security investigation requirement and backlog at CBP, it appears that any attempt to transition to DTI presents the most significant risk of interruptions in service.

I declare under the penalty of perjury that the foregoing is true and correct

Executed on October 7, 2006.

Paul D. Fauser

# EXHIBIT 2

Washington, DC 20229

**U.S. Customs and Border Protection**

June 15, 2006

VIA FACSIMILE

Ms. Shelia Corbett
President
Automation Technologies, Inc.
Suite 350
1950 Old Gallows Road
Vienna, VA 22182

SUBJECT: Solicitation No. HSBP1005R0541
Preventive and Remedial Maintenance for CBP Mainframe Environment

Dear Ms. Corbett:

This letter pertains to your firm's offer submitted in response to the above-numbered solicitation.

Technical proposals from certain offerors cited agreements with Original Equipment Manufacturers (OEM) as important to demonstrating the offeror's ability to comply with OEM service recommendations. Since the submission of revised price proposals has resulted in a shift in the relative pricing position of offerors, it will be necessary for all offerors that cited such OEM agreements to submit copies of the OEM agreements to the Government for verification. Please provide one copy of each of the OEM agreements (if any) to the address contained in the solicitation for submission of offers, on or before 4:00PM ET on June 23, 2006.

The Government will use the information received as of 4:00PM ET on June 23, 2006 to make a final award decision.

Sincerely,

Thomas Uberto

Thomas Uberto
Contracting Officer

# EXHIBIT 3

Washington, DC 20229

**U.S. Customs and Border Protection**

August 7, 2006

VIA FACSIMILE

Ms. Shelia Corbett
President
Automation Technologies, Inc.
Suite 350
1950 Old Gallows Road
Vienna, VA 22182

SUBJECT: Solicitation No. HSBP1005R0541
Preventive and Remedial Maintenance for CBP Mainframe Environment

Dear Ms. Corbett:

This letter constitutes a written debriefing of your firm's proposal as requested in your e-mail message dated August 7, 2006. This debriefing will provide information required by FAR 15.506, and contains only that information which the Contracting Officer is allowed by regulation to disclose.

Evaluation Results

As stated in the award notification, after careful consideration we determined that your firm's proposal was not the most advantageous to the Government. The contract was awarded to:

DIGITAL TECHNOLOGIES, INC
45150 BUSINESS COURT
SUITE 550
STERLING, VA 20166-6707

Technical/Past Performance scores were released in Amendment No. 0004, and no changes were made to the scores after receipt of final price proposals. Scores and evaluated prices were as follows for your firm and the successful offeror:

| | DTI | ATI |
|---|---|---|
| Technical/Past Performance Score | 76% | 85% |
| Evaluated Price (including options) | $39,762,397.56 | $46,635,300.00 |

Based on a detailed, integrated evaluation by the Government (identified in Section A.40 BASIS OF AWARD (TRADE-OFF ANALYSIS)) of how well the proposals satisfied the evaluation criteria, your firm's proposal was found not to represent the best value to the Government, considering price and technical scoring. As stated in the solicitation, between competing proposals, the Government is not willing to pay significantly more

for a minor difference in the non-cost or price factors rating. In this instance, the difference in price was simply too great to overcome given the comparatively small difference in technical/past performance scores.

I would like to thank you for your participation in this procurement and I hope the information provided above will assist you in future competitions.

Sincerely,

Thomas M. Uberto

Thomas M. Uberto
Contracting Officer