AGREED-UPON COPY WITHOUT ANY REDACTIONS
MAY BE MADE PUBLIC

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| AUTOMATION TECHNOLOGIES, INC., Plaintiff, | |
| v. | No. 06-694C (Judge Marian Blank Horn) |
| UNITED STATES, Defendant. | |

## DIGITAL TECHNOLOGIES, INC.'S MOTION TO DISMISS THE COMPLAINT

Defendant-Intervenor Digital Technologies, Inc. ("DTI") hereby respectfully moves the Court for an Order dismissing the Complaint on the ground that Plaintiff Automation Technologies, Inc. ("ATI") lacks standing to protest the award made to DTI by the Bureau of Customs and Border Protection of the United States Department of Homeland Security ("CBP") because ATI has not been prejudiced by that award. In addition, this Court lacks jurisdiction over the Complaint because ATI is not challenging the award to DTI but rather the issuance of task orders pursuant to that award.

In support of its motion, DTI relies on the administrative record ("AR") and the Declaration of Thomas M. Uberto ("Uberto Decl.") that have previously been filed in this case by the United States and on the following points and authorities.

## ARGUMENT

## STATEMENT OF FACTS

On September 30, 2005, CBP issued a request for proposals for maintenance of computer equipment and systems (RFP No. HSBP10-05-R-0541) (the "RFP"). AR 1, 98.

The RFP explicitly contemplated the award of an indefinite-delivery/indefinite-quantity contract, with a guaranteed order minimum of $2,500 and annual order ceilings of $9.9 million for the base period and four option periods, for a total contract ceiling of $49.5 million. AR 2.

At the time the RFP was issued, CBP intended to make only a single award because of the nature of the work. *See* Determination and Findings of the Contracting Officer attached to the Uberto Declaration. Nevertheless, by its terms, the RFP permitted both multiple offers and multiple awards. AR 30 (Section A.31 52.212-1(e), titled "Multiple Offers") and AR 31 (Section A.31 52.212-1(h), titled "Multiple Awards").[1]

Pursuant to the RFP, ATI received an award in January 2006 (the "ATI Award"). AR 113.

As a result of the ATI Award, DTI filed a protest with the GAO. AR 115-119. CBP overrode the automatic stay, AR 120-121, and issued a series of task orders to ATI to provide services under the terms of the ATI Award. AR 122-199 and Uberto Decl. ¶ 13.

As a result of DTI's protest to the GAO, on March 20, 2006, the GAO made an Outcome Prediction indicating that CBP "improperly entered into discussions with only one offeror [ATI]" (AR 200), the result of which was that CBP allowed ATI "to in effect revise its offered price

---

[1]As a general rule, the statement in a Request For Proposals that the agency intends to make multiple awards does not preclude the agency from awarding all the work under that solicitation to the same offeror. *See, e.g., McNeil Techs., Inc.*, B-278904.2, Apr. 2, 1998, 98-1 CPD ¶ 96 at 5; *Allied-Signal Aerospace Co.*, B-240938.2, Jan. 18, 1991, 91-1 CPD ¶ 58 at 3.

with its answer." *Id.* When CBP agreed to take corrective action, *id.*, GAO dismissed DTI's protest as academic. AR 202.

To implement its corrective action, CBP issued an amendment to the RFP on March 30, 2006, in which it re-opened the competition and called for the submission of revised price proposals. AR 203-209. CBP received the revised price proposals on April 11, 2006. Uberto Decl. ¶ 14.

In its proposal, ATI claimed that its arrangement with Fujitsu, a key Original Equipment Manufacture ("OEM"), was exclusive. However, DTI had informed CBP that Fujitsu had agreed to be a subcontractor of DTI if DTI received an award. To assess this apparent conflict, on June 15, 2006, the Contracting Officer wrote to both DTI (AR 625) and ATI (AR 632) requesting copies of all of DTI's and ATI's OEM agreements.

It is important to point out that at the time the Contracting Officer requested those OEM agreements, it was his intent to make an award to ATI even though DTI's pricing under the revised price proposals was lower than ATI's. As Mr. Uberto states in his Declaration: "Had ATI's agreement with Fujitsu actually been exclusive, then this would have provided support for a best value award decision in favor of ATI." Uberto Decl. ¶ 18.

Furthermore, it is reasonable to conclude that Mr. Uberto expected the response to his June 15 letters to confirm the unequivocal statement made by ATI which he quotes in ¶ 17 of his Declaration (" 'We have established an exclusive relationship with Fujitsu who is the only authorized provider of support for Fujitsu products. This provides us [ATI] with the enviable position of being the only firm authorized to provide service for that equipment.'").

However, it turned out that ATI's arrangement with Fujitsu was not exclusive and that Fujitsu was willing to support DTI if an award was made to DTI. AR 629. Accordingly, CBP

determined that ATI did not in fact provide the best value to the Government, and on August 4, 2006, pursuant to the RFP, DTI received an award (the "DTI Award"). AR 223.

In this regard, it is worthy of note that, as Mr. Uberto knew, at the time the three-member Source Evaluation Board reviewed ATI's and DTI's technical proposals and issued its recommendation to the Contracting Officer on December 8, 2005, the Board believed ATI's relationship with Fujitsu was exclusive. (AR 567, second row from the top, handwritten comments regarding DTI's proposal states "No affiliation w/Fujitsu"). However, the Contracting Officer also knew that despite the Source Evaluation Board's belief that DTI would not have Fujitsu's support if DTI received an award, the Board had nonetheless concluded that there was only a "slight difference in technical merit" between ATI's and DTI's proposals. AR 587.

Although the Contracting Officer states that CBP did not intend to make more than one award under the RFP (Uberto Decl. ¶ 23), the fact is that CBP now has made multiple awards, the ATI Award in January 2006 and the DTI Award in August 2006. The Contracting Officer also states that "the existence of a second contract by virtue of the corrective action [taken by CBP following the GAO's Outcome Prediction] is advantageous to the Government. While CBP's intent and the nature of the work merit having only one contractor perform work at any one time, CBP may utilize the services of either contractor over the coming months should severe performance difficulties arise with the incumbent, be it ATI or DTI." *Id.* Therefore, ATI continues to be eligible to receive task orders under the RFP pursuant to the ATI Award.

**ATI LACKS STANDING**

It is well established that before a federal court may address the merits of a legal claim, the person invoking the jurisdiction of the court must establish the requisite standing to sue.

*Ortho Pharm. Corp. v. Genetics Inst., Inc.*, 52 F.3d 1026, 1032-33 (Fed. Cir. 1995). As in any federal court, litigants before this Court must demonstrate that they have standing to bring a claim. *Anderson v. United States*, 344 F.3d 1343, 1350 n.1 (Fed. Cir. 2003). Furthermore, as the party invoking jurisdiction, ATI has the burden of establishing its standing. *Myers Investigative and Sec. Servs., Inc. v. United States*, 275 F.3d 1366, 1369 (Fed. Cir. 2002); *Smith v. United States*, 58 Fed. Cl. 374, 382 (2003); *Sterling Savings v. United States*, 57 Fed. Cl. 234, 236 (2003).

Because this is a bid protest case, standing "is limited to actual or prospective bidders or offerors whose direct economic interest would be affected by the award of the contract or by failure to award the contract." *Am. Fed'n of Gov't Employees v. United States*, 258 F.3d 1294, 1302 (Fed. Cir. 2001). Consequently, in order for ATI to carry its burden of establishing that its "direct economic interest" was affected by the DTI Award, ATI must show that it was prejudiced by the DTI Award. *Information Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003); *Myers Investigative and Sec. Servs., Inc.*, 275 F.3d at 1370 ("[P]rejudice (or injury) is a necessary element of standing.")

Moreover, as this Court recognized in issuing its Scheduling Order, "[p]rejudice is a question of fact." *Bannum v. United States*, 404 F.3d 1346, 1353 (Fed. Cir. 2005) (*citing Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1057 (Fed. Cir. 2000)).

Here, the facts show that ATI is not prejudiced by a second award under the RFP to DTI for the following reasons. First, the RFP informed both DTI and ATI that there was a possibility of multiple awards. AR 31 (Section A.31 52.212-1(h), titled Multiple Awards).

Second, if CBP had in fact made multiple awards in January, that is, if CBP had made the DTI Award at the same time that it actually made the ATI Award, neither ATI nor DTI would

have had standing to object to the award to the other. Because ATI received an award in the form it proposed, the fact that DTI receives a task order pursuant to its separate award does not grant standing to ATI to protest the DTI Award.

Third, offerors were well aware that the award resulting from the RFP was anticipated to be "indefinite delivery, indefinite quantity" and that the "Government will be under no obligation to the contract holder to purchase any specified quantity of services, other than the guaranteed minimum of $2,500…". AR 2. In this regard, the Court has asked the parties to address the fundamental fairness of potentially marginalizing ATI's protest based on this obviously low guaranteed minimum. However, such low minimums are by no means uncommon in such contracts and they do not create any additional rights for ATI or obligations for CBP beyond their express terms. *See, e.g., Travel Centre v. Barram*, 236 F.3d 1316, 1319 (Fed. Cir. 2001) (The satisfaction of a low minimum quantity of only $100.00 ended the government's obligation under an IDIQ contract with a travel agency to provide services to government agencies); *A&D Fire Protection, Inc. v. United States,* 72 Fed. Cl. 126, 128 (2006) ("A&D was awarded an Indefinite Delivery-Indefinite Quantity (IDIQ) contract . . . for a minimum of $1000 per contract year and for an estimated maximum of $50,000,000.") ATI was aware of the low guaranteed minimum when it decided to submit a bid in response to the RFP. Any question regarding the fairness of the amount of the minimum was addressed when ATI submitted its bid and accepted that amount.

Moreover, as this Court held in *J. Cooper & Assoc. v. United States*, 53 Fed. Cl. 8, 16-17 (2002):

> "[A]n IDIQ contract provides that the government will purchase an indefinite quantity of supplies or services from a contractor during a fixed period of time, it requires the government to order only a stated minimum quantity of supplies or services." *Travel Centre v. Barram*, 236 F.3d at 1319 (citing 48 C.F.R.

> §16.504(a) (2000); *Dot Sys. Inc. v. United States*, [30 CCF ¶70,110] 231 Ct. Cl. 765 (1982)); ... *see also Coyle's Pest Control, Inc. v. Cuomo*, [42 CCF ¶77,373] 154 F.3d 1302, 1304 (Fed. Cir. 1998) (characterizing as "well-reasoned" the Housing and Urban Development Board of Contract Appeals decision, which stated: "'The enforcement of such a contract [an indefinite quantity contract, or a requirements contract] would fail for lack of consideration in the absence of a clause stating a minimum quantity or a clause requiring [HUD] to purchase all of its requirements from [the contractor].' "); *Torncello v. United States*, 231 Ct. Cl. at 28, 681 F.2d at 761 (citing *Willard, Sutherland & Co. v. United States*, 262 U.S. 489; *Mason v. United States*, 222 Ct. Cl. at 443 n.5, 615 F.2d at 1346 n.5; Gavin, *Government Requirements Contracts*, 5 Pub. Cont. L.J. 234, 240-44 (1972)). Therefore, an IDIQ contract:
>
> > requires the government to order only a stated minimum quantity of supplies or services[,] ... [and] once the government has purchased the minimum quantity stated in an IDIQ contract from the contractor, it is free to purchase additional supplies or services from any other source it chooses. An IDIQ contract does not provide any exclusivity to the contractor.

*Travel Centre v. Barram*, 236 F.3d at 1319.

Here, because CBP did not intend to make more than one award at the time the RFP was issued and because the $2,500 minimum only is relevant as a result of the unique circumstances of this case that resulted in two awards, no issue of fundamental fairness is triggered. There also is no adverse effect on the system of statutory and regulatory processes to address and resolve procurement disputes in general and protests in particular by virtue of a ruling that ATI lacks standing. CBP did not include this $2,500 minimum or make a second award to DTI for the purpose of thwarting a potential protest by ATI.

ATI was not prejudiced by the DTI Award because the DTI Award was made under the same RFP as the ATI Award and at a time when CBP had no legal obligation to issue any future task orders to ATI, having already exceeded the $2,500 minimum. Therefore, as the GAO has

twice held (AR 721-722, 750-752), ATI's direct economic interest was not affected by the DTI Award and hence ATI lacks standing.

DTI respectfully submits that this Court should reach the same conclusion as the GAO because there are two successful offerors, DTI and ATI, either of which may receive task orders in the future (*see* Uberto Decl. ¶ 23), but one of which, ATI, has no legally enforceable right to receive any further task orders and hence lacks standing to protest the DTI Award.

**THIS COURT LACKS JURISDICTION OVER THE COMPLAINT**

In *A&D Fire Protection, Inc. v. United States*, *supra,* Judge Bush dismissed a protester's Complaint for lack of jurisdiction on the ground that the enactment of the Federal Acquisition Streamlining Act of 1994 ("FASA"), Pub. L. No. 103-355, 108 Stat. 3243 (1994), had deprived this Court of jurisdiction over protests of individual task orders under indefinite delivery, indefinite quantity ("IDIQ") contracts:

> In particular, when a procurement envisioned a multiple award IDIQ contract, creating, through competition, a pool of contractors for certain work projects, the issuance of individual task orders to these contractors would not be subject to protests. Pub. L. No. 103-355, § 1054 (now codified at 41 U.S.C. § 253j(d) (2000)). The bar on protests of individual task orders states that "[a] protest is not authorized in connection with the issuance or proposed issuance of a task or delivery order except for a protest on the ground that the order increases the scope, period, or maximum value of the contract under which the order is issued." 41 U.S.C. § 253j(d).
>
> * * *
>
> The court finds no reason to disagree with the analysis of Section 253j(d)'s bid protest bar in *Labat*[*-Anderson Inc. v. United States,* 50 Fed. Cl. 99 (2001)] and *Group Seven*[*Assocs., LLC v. United States,* 68 Fed. Cl. 28 (2005)], as it applies to task orders on multiple award IDIQ contracts. This court cannot frustrate the intent of Congress, which was to exempt from protest the issuance of individual task orders to contractors who had already received awards, subject to protest, of their master IDIQ contracts. In the

> place of agency protests, Government Accountability Office (GAO) protests or judicial review, Congress saw fit to offer disappointed task order bidders recourse to the agency's task and delivery order ombudsman. 41 U.S.C. § 253j(e) (2000); 48 C.F.R. § 16.505(b)(5).

(72 Fed. Cl. at 133, 134).

DTI understands that this case differs from the procurements in *A&D Fire* as well as the cases analyzed by Judge Bush because CBP did not have multiple awardees in mind at the time it issued the RFP in this case. However, that does alter the fact that there now are parallel contracts and competing task orders or that the harm ATI claims it has suffered arises solely from the fact that CBP will issue a task order to DTI which ATI believes it should have received. It also does not alter the fact that this Court should dismiss the Complaint because protests as to task orders under IDIQ contracts are not within this Court's jurisdiction for the reasons set forth in *A&D Fire*.

**CONCLUSION**

Accordingly, for these reasons, DTI respectfully submits that the Complaint in this case should be dismissed because ATI lacks standing and because this Court lacks jurisdiction to hear ATI's protest of task orders.

Respectfully submitted,

Leslie H. Wiesenfelder
Dow Lohnes PLLC
1200 New Hampshire Avenue, NW
Suite 800
Washington, DC 20036-6802
202-776-2726

Counsel for
Digital Technologies, Inc.

Dated: October 16, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that I have caused to be delivered, by electronic means, on this 16th day of October 2006, a copy of the foregoing Motion to Dismiss the Complaint on the following counsel:

Gregg Schwind, Esq.
U.S. Department of Justice
Commercial Litigation Branch
Civil Division
1100 L Street, N.W., 8th Floor
Washington, D.C. 20530

Walter F. Zenner, Esq.
Pillsbury Winthrop Shaw Pittman LLP
1650 Tysons Boulevard
McLean, Virginia 22102-4859

Leslie H. Wiesenfelder