**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
(Electronically Filed on October 18, 2006)

| | | |
|---|---|---|
| AUTOMATION TECHNOLOGIES, INC., | ) | |
| Plaintiff, | ) | No. 06-694C |
| v. | ) | (Judge Horn) |
| UNITED STATES, | ) | |
| | ) | BID PROTEST |
| Defendant, | ) | |
| and | ) | |
| DIGITAL TECHNOLOGIES, INC. | ) | |
| Intervenor | ) | |

**PLAINTIFF AUTOMATION TECHNOLOGIES, INC.'S RESPONSE TO DEFENDANT'S AND INTERVENOR'S MOTIONS TO DISMISS FOR LACK OF STANDING**

Walter F. Zenner
PILLSBURY WINTHROP
SHAW PITTMAN LLP
1650 Tysons Boulevard
McLean, Virginia 22102
Tel: (703) 770-7603
Fax: (703) 770-7901

*Counsel of Record for Plaintiff Automation Technologies, Inc.*

*Of Counsel:*

John E. Jensen
Orest J. Jowyk
PILLSBURY WINTHROP
SHAW PITTMAN LLP
1650 Tysons Boulevard
McLean, Virginia 22102
Tel: (703) 770-7900

Dated: October 18, 2006

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ iii

INTRODUCTION ........ 1

QUESTION PRESENTED ........ 2

FACTS ........ 2

ARGUMENT ........ 2

I. ATI IS AN "INTERESTED PARTY" AND THEREFORE HAS STANDING TO PROTEST CBP'S AWARD OF A CONTRACT TO DTI, BECAUSE ATI IS AN ACTUAL OFFEROR WHOSE "DIRECT ECONOMIC INTEREST" IS ADVERSELY AFFECTED BY THAT AWARD ........ 2

A. ATI Is an Actual Offeror ........ 3

B. ATI's Direct Economic Interest Is Adversely Affected by CBP's Award of a Contract to DTI ........ 4

1. CBP Cannot Lawfully Make Multiple Awards Because It Has Not Implemented the Requisite Statutory and Regulatory Competition Safeguards ........ 5

2. CBP Does Not Intend to Maintain ATI as a Multiple-Award Contract Holder ........ 9

II. THE GOVERNMENT'S ARGUMENTS DO NOT VITIATE ATI'S INTERESTED PARTY STATUS ........ 13

III. FUNDAMENTAL FAIRNESS AND SOUND POLICY DICTATE THAT ATI SHOULD HAVE STANDING TO PROTEST ........ 15

## TABLE OF AUTHORITIES

Cases

*ABF Freight System, Inc. v. United States,*
55 Fed. Cl. 392 (2003) ....14

*Alfa Laval Separation, Inc. v. United States,*
175 F.3d 1365 (Fed. Cir. 1999) ....14

*American Fed'n of Gov't Employees, AFL-CIO v. United States,*
258 F.3d 1294 (Fed. Cir. 2001) ....3

*Banknote Corp. of America, Inc. v. United States,*
365 F.3d 1345 (Fed. Cir. 2004) ....3

*Myers Investigative and Sec. Services, Inc. v. United States,*
275 F.3d 1366 (Fed. Cir. 2002) ....3

*OTI America, Inc. v. United States,*
68 Fed. Cl. 108 (2005) ....14

*Systems Plus, Inc. v. United States,*
60 Fed. Cl. 757 (2006) ....12, 13

Statutes and Regulations

28 U.S. C. § 1491 ....2

41 U.S.C. § 253h ....5, 6

41 U.S.C. § 253j ....7, 8, 11

41 U.S.C. § 253k ....5

48 C.F.R. subpart 16.5 ....6, 7, 8, 11

Other Authorities

*Automation Technologies, Inc.—Recons.,*
B-298618.3, Oct.. 4, 2006 ....15

*Recon Optical, Inc.; Lockheed-Martin Corp., Fairchild Systems,*
B-272239, B-272239.2, July 17, 1996, 96-2 CPD ¶ 21 ....4

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
(Electronically Filed on October 18, 2006)

| | | |
|---|---|---|
| AUTOMATION TECHNOLOGIES, INC., | ) | |
| Plaintiff, | ) | No. 06-694C |
| v. | ) | (Judge Horn) |
| UNITED STATES, | ) | |
| Defendant, | ) | |
| and | ) | BID PROTEST |
| DIGITAL TECHNOLOGIES, INC. | ) | |
| Intervenor | ) | |

**PLAINTIFF AUTOMATION TECHNOLOGIES, INC.'S RESPONSE TO DEFENDANT'S AND INTERVENOR'S MOTIONS TO DISMISS FOR LACK OF STANDING**

**INTRODUCTION**

Plaintiff Automation Technologies, Inc. ("ATI") is an "interested party" to challenge the award of a contract by the U.S. Department of Homeland Security, Bureau of Customs and Border Protection ("CBP"), to Digital Technologies, Inc. ("DTI") under the instant solicitation (No. HSBP10-05-R-0541). ATI is an interested party because it has a "direct economic interest" in the propriety of the award to DTI. ATI's interest is not negated by CBP's earlier award of a contract to ATI under the solicitation, prior to DTI's bid protests and CBP's re-opening of the competition. In arguing otherwise, the defendants erroneously equate "direct economic interest" – the governing statutory standard – with a breach of contract rights. CBP cannot here, in the heat of litigation, transform the unequivocal single-award acquisition that CBP has

conducted into a lawful, multiple-award acquisition, and thereby divest this court of jurisdiction over CBP's procurement actions.

## QUESTION PRESENTED

Whether CBP's award of a contract to DTI affects ATI's "direct economic interest" where the facts demonstrate that CBP has always viewed, and continues to view, the procurement as a "winner-take-all" competition and that the winner is now DTI, which will receive substantially all the work going forward.

## FACTS

ATI respectfully incorporates by reference the facts as forth in its initial filings in this case on October 5 and 7, 2006, as supplemented by additional facts from the Administrative Record ("AR") cited in the Argument section below.

## ARGUMENT

### I. ATI IS AN "INTERESTED PARTY" AND THEREFORE HAS STANDING TO PROTEST CBP'S AWARD OF A CONTRACT TO DTI, BECAUSE ATI IS AN ACTUAL OFFEROR WHOSE "DIRECT ECONOMIC INTEREST" IS ADVERSELY AFFECTED BY THAT AWARD

ATI has standing to have its case heard on the merits because it is an "interested party," as that term is used in the Tucker Act, 28 U.S.C. § 1491. The act provides in pertinent part that:

> [b]oth the Unite[d] States Court of Federal Claims and the district courts of the United States shall have jurisdiction to render judgment on an action by an *interested party* objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the *award of a contract* or *any alleged violation of statute or regulation in connection with a procurement* or a proposed procurement.

28 U.S.C. § 1491(b)(1) (2006) (emphasis added). Congress added this provision to the Tucker Act in 1996 as part of the Administrative Dispute Resolution Act of 1996 ("ADRA"), Pub. L. No. 104-320, 110 Stat. 3870, § 12(b) (Oct. 19, 1996).

In *American Federation of Government Employees, AFL-CIO v. United States,* 258 F.3d 1294, 1302 (Fed. Cir. 2001) ("*AFGE*"), the court held that the term "interested party," as used in 28 U.S.C. § 1491(b)(1), has the same meaning as that term has under the Competition in Contracting Act of 1984 ("CICA"). Under CICA, an "interested party" is an "actual or prospective bidder or offeror whose *direct economic interest* would be affected by the *award of the contract* or by failure to award the contract." 31 U.S.C. § 3551(2) (emphasis added). The court in *AFGE* concluded that, in enacting ADRA, Congress intended the term interested party to have the same meaning as set forth in CICA, and not the broader meaning of the term as used under the Administrative Procedure Act ("APA"). *Id.* at 1299-1302; *see also Banknote Corp. of America, Inc. v. United States,* 365 F.3d 1345, 1352 (Fed. Cir. 2004) (discussing with approval the holding in *AFGE*); *Myers Investigative and Sec. Services, Inc. v. United States*, 275 F.3d 1366, 1370 (Fed. Cir. 2002) (stating that prejudice and standing are not separate matters; "prejudice (or injury) is a necessary element of standing").

As discussed below, ATI meets this test of interested party because (1) it is an actual offeror, and (2) its direct economic interest is adversely affected by the award of a contract to DTI.

**A. ATI Is an Actual Offeror**

ATI is an actual offeror in the procurement which resulted in the award to DTI. In response to the Solicitation, ATI initially submitted a proposal on October 11, 2005. AR II, Tab 19. ATI then submitted an amended proposal on December 1, 2005. AR II, Tab 22. On the basis of the three offerors' proposals, CBP selected ATI over the other offerors. AR I, Tab 4, at 112 (determination).

Based on the re-opened competition and the issuance of Solicitation Amendment Nos. 3 and 4, ATI submitted a revised price offer on April 10, 2006. AR II, Tab 27. On the basis of the

revised offers of ATI and DTI, CBP this time selected DTI over ATI. AR I, Tab 14, at 222 (determination). The contract award that ATI protests is that which is based on the Solicitation, as amended through Amendment No. 4. ATI was a participant throughout the procurement and, in particular, submitted a revised proposal in response to the amended Solicitation upon which the protested contract award is predicated. ATI thus satisfies the actual offeror prong of the interested party test.

**B. ATI's Direct Economic Interest Is Adversely Affected by CBP's Award of a Contract to DTI**

As explained below, ATI's direct economic interest will be affected by CBP's award of the contract to DTI in July 2006. ATI is aware of no published decision with facts similar to the case at bar. Perhaps the closest case to the facts at hand is a GAO case, *Recon Optical, Inc.; Lockheed-Martin Corp., Fairchild Systems*, B-272239, B-272239.2, July 17, 1996, 96-2 CPD ¶ 21. This case is the only one we found holding that multiple awardees generally are not interested parties for purposes of protesting each other's awards. The particular facts of the case render its outcome inapposite, as the protester there received a contract for the complete performance of the work that it proposed to perform, as well as for other reasons discussed in ATI's September 12, 2006, request for reconsideration of the GAO's dismissal decision. *See* AR II, Tab 40, at 730-32. The case, nonetheless, is instructive because of its statement that a protester has standing where protestor's award would be "reduced, increased, or otherwise affected," or the protestor "otherwise suffers direct economic harm," as a result of an award to another contractor. *Recon Optical* at 3. This standard is satisfied here, given the following fundamental facts.

CBP estimates that this requirement will generate as much as $49.5 million of contract revenue over an anticipated five-year period of performance, running from January 1, 2006

through December 31, 2010. AR I, Tab 1, at 2 (Additional Information, ¶ 4); Declaration of Thomas M. Uberto (Oct. 12, 2006) ("Uberto Decl.") ¶ 8. ATI is the incumbent contractor and was selected as recently as December 2005 to perform this requirement. AR I, Tab 4, at 112 (determination). DTI now is scheduled to take over complete performance of this requirement on November 1, 2006 (Uberto Decl. ¶ 22), with no real possibility that CBP will task ATI ever to resume performance, given the facts of the procurement. Indeed, as demonstrated below, CBP has neither the legal ability nor the intent to maintain ATI as a multiple award contract holder for this requirement. The prejudice to ATI could not be greater or more clear.

**1. CBP Cannot Make Multiple Awards Because It Has Not Implemented the Requisite Statutory and Regulatory Competition Safeguards**

As a threshold matter, CBP has no legal authority to make multiple awards under the Solicitation because neither the Solicitation nor the awarded contracts contain the provisions that are mandatory elements of multiple-award solicitations and contracts.

The legal authority for a civilian agency to conduct procurements for indefinite quantities of goods and services is codified at 41 U.S.C. § 253h, which states in part as follows:

> (a) Authority to award
>
> Subject to the requirements of this section, section 253j of this title, and other applicable law, the head of an executive agency may enter into a task or delivery order contract (as defined in section 253k of this title) for procurement of services or property.

41 U.S.C. § 253h(a) (Supp. 2006). Congress set forth this authority as part of the Federal Acquisition Streamlining Act of 1994 ("FASA"), Pub. L. No. 103-355, § 1054, 108 Stat. 3243 (Oct. 13, 1994). Section 253k of title 41 defines "task order contract" as follows:

> (1) The term "task order contract" means a contract for services that does not procure or specify a firm quantity of services (other than a minimum or maximum quantity) and that provides for the

> issuance of orders for the performance of tasks during the period of the contract.

41 U.S.C. § 253k(1) (Supp. 2006).

FASA further created a system for the award of either a single indefinite-quantity contract or multiple indefinite-quantity contracts. Pub. L. No. 103-355, § 1054 (codified at 41 U.S.C. § 253h(d) (Supp. 2006)). The statute provides as follows:

> (d) Single and multiple contract awards
>
> (1) The head of an executive agency may exercise the authority provided in this section--
>
> (A) to award a single task or delivery order contract; or
>
> (B) if the solicitation states that the head of the executive agency has the option to do so, to award separate task or delivery order contracts for the same or similar services or property to two or more sources.

41 U.S.C. § 253h(d)(1) (Supp. 2006). FASA created a preference for multiple-award contracting. *Id.* at § 253h(d). The regulations implementing these provisions of FASA are found in the Federal Acquisition Regulation ("FAR") at subpart 16.5. *See* 48 C.F.R. subpart 16.5 (2006). As set forth in FASA's statutory scheme, discussed above, any procurement for indefinite quantities of goods or services will result in either a single award or in multiple awards. *See generally* 48 C.F.R. subpart 16.5.

In light of the foregoing statutory provisions, the multiple-award scheme that CBP now professes to want to implement is without legal predicate and justification in this acquisition. CBP may not manage a procurement toward one outcome (single award), then decide, after the fact, that it has accomplished just the opposite outcome (multiple awards). Of great import, neither the Solicitation, nor the original ATI contract, nor the new DTI contract contains the key

provisions that are mandatory for a multiple-award indefinite-quantity contract. In particular, the FAR provides:

> A solicitation and contract for an indefinite quantity *must*—
>
> . . .
>
> (iv) State the procedures that the Government will use in issuing orders, including the ordering media, and, if multiple awards may be made, state the procedures and selection criteria that the Government will use to provide awardees a fair opportunity to be considered for each order (see 16.505(b)(1));
>
> (v) Include the name, address, telephone number, facsimile number, and e-mail address of the agency task and delivery order ombudsman (see 16.505(b)(5)) if multiple awards may be made;

48 C.F.R. § 16.504(a)(4) (emphasis added.) These regulatory requirements implement the following provisions of FASA:

> (b) Multiple award contracts
>
> When multiple contracts are awarded under section 253h(d)(1)(B) or 253i(e) of this title, all contractors awarded such contracts shall be provided a fair opportunity to be considered, pursuant to procedures set forth in the contracts, for each task or delivery order in excess of $2,500 that is to be issued under any of the contracts unless—
>
> . . .
>
> (e) Task and delivery order ombudsman
>
> The head of each executive agency who awards multiple task or delivery order contracts pursuant to section 253h(d)(1)(B) or 253i(e) of this title shall appoint or designate a task and delivery order ombudsman who shall be responsible for reviewing complaints from the contractors on such contracts and ensuring that all of the contractors are afforded a fair opportunity to be considered for task or delivery orders when required under subsection (b) of this section. The task and delivery order ombudsman shall be a senior agency official who is independent of the contracting officer for the contracts and may be the executive agency's competition advocate.

Pub. L. No. 103-355, § 1054 (codified at 41 U.S.C. § 253j(b) and (e) (Supp. 2006)) (emphasis added).

The failure of the Solicitation, the ATI contract, and the DTI contract to contain any of this important information demonstrates that the two contracts are not multiple-award indefinite-quantity contracts. They are, instead, each single-award indefinite-quantity contracts awarded at different stages of the procurement and protest process. That is their legal nature and CBP has no authority now to call them something they are not.

Second, the contract file fails to set forth a legal justification for the award of multiple award indefinite-quantity contracts. The FAR provides: "The contracting officer must document the decision whether or not to use multiple awards in the acquisition plan or contract file." 48 C.F.R. § 16.504(c)(1)(C). In this instance, the contract file contains no such documentation. To the contrary, the file plainly rejects the use of multiple award contracts for this acquisition. The Contracting Officer's September 24, 2005 Determination and Findings ("D&F") states that "only a single contractor can reasonably perform the work," that "[t]he expected cost of administration of multiple contracts outweighs the expected benefits of making multiple awards," and that "more favorable terms and conditions, including pricing, will be provided if a single award is made." AR. II, Tab 43, at 753 (findings 2, 3, and 4). The D&F then concludes that "the negotiation and award of a single award contract . . . is in the best interests of the Government." AR. II, Tab 43, at 753 (determination). Lacking the legal predicate for making multiple awards, any decision to make multiple awards now is legally unsubstantiated.

Third, CBP's ostensibly planned possible use of the multiple awards – to create the ability to "utilize the services of either contractor over the coming months should severe

performance difficulties arise with the incumbent, be it ATI or DTI" (Uberto Decl. ¶ 23) – conflicts with the task order competition process applicable to multiple-award acquisitions. The process consists of awardees bidding for task orders and having "a fair opportunity to be considered for each order." 48 C.F.R. § 16.504(a)(4)(iv); *see also* 41 U.S.C. § 253j(b) (Supp. 2006)). CBP does not plan to manage the DTI and ATI contracts in this manner. *See* Uberto Decl. ¶¶ 22-23. DTI and ATI will not bid for tasks. *See id.* At most, CBP plans to consider using ATI only in the event that DTI suffers severe performance difficulties. Uberto Decl. ¶ 23.

Lacking legal authority to implement a multiple award scheme that accords with FASA and the FAR, after conducting a procurement for a single award, the Government legally must choose between ATI and DTI. CBP clearly has chosen DTI in the last source selection and, as a result, ATI has a direct economic interest in that award decision.

**2. CBP Does Not Intend to Maintain ATI as a Multiple-Award Contract Holder**

The record also demonstrates that CBP does not in fact *intend* for ATI to be a multiple-award contract holder (even if the CBP awards to ATI and DTI as multiple-award contracts had sufficient legal predicate and justification). The record instead demonstrates that CBP intends that ATI's contract will expire of its own accord on December 31 -- without CBP ever having conducted any multiple award task order competitions. This approach, which is tantamount to a termination for convenience, establishes the requisite prejudice to challenge the award decision.

The history of the CBP requirement and history of the procurement demonstrate that CBP wanted only one contractor. ATI alone performed this work under a prior contract, beginning July 2004, and DTI alone performed the work under a contract before that. Third Declaration of Paul D. Fauser (Oct. 7, 2006) ¶ 4 (Exhibit 1 to the Preliminary Injunction Motion). Thus, for at

least several years, CBP has had only one company under contract to perform the subject services.

The current procurement also reflects the determination that CBP would make only one award. First, as discussed *supra*, the file contains a D&F that sets forth CBP's position that it will procure a single-award indefinite-quantity contract. AR. II, Tab 43, at 753.

Second, neither the Solicitation nor the contracts contain any of the FAR's mandatory terms of a multiple award contract, as discussed in Section I.B.1, *supra*. That information, especially the procedures and selection criteria that the Government will use to provide awardees a fair opportunity to be considered for each order, is the *sine qua non* of a multiple award indefinite quantity contract. Its absence speaks volumes regarding CBP's intent.

Certain language in the Solicitation and its amendments also evidences CBP's intent to make only a single award. For example, in the original Solicitation, clause A.36 52.216-1 Type of Contract (Apr 1984) states, "The Government contemplates the award of an indefinite-delivery, indefinite quantity contract resulting from this solicitation." AR I, Tab 1, at 41. CBP affirmed its intent to award just one contract on March 31, 2006, when CBP issued Amendment No. 3, which included clause A.34 52.212-2 Evaluation—Commercial Items, stating, in paragraph (a), "The Government will award a contract resulting from this solicitation to the responsible offeror whose offer conforming to the solicitation will be most advantageous to the Government . . . ." AR I, Tab 12, p. 208. The Government references two Solicitation provisions. The first, clause A.31 52.212-1 Instructions to Offerors—Commercial Items (Jan 2005), is a standard FAR clause that refers to "multiple awards," but then discusses the possible division of contract "items or groups of items" into different awards. AR I, Tab 1, at 30-31 (paragraph (h)). The other referenced clause, A.40 Basis for Award (Trade-Off Analysis), if read

in isolation, admittedly would allow for multiple awards, but must be construed as part of the overall Solicitation. AR I, Tab 1, at 44. Construing the Solicitation as a whole, given its failure to include any of the required multiple award terms prescribed by FAR 16.504(a)(4), and given the inclusion of the noted references to the award of a single contract, the Solicitation comports with the rest of the evidence that CBP contemplated a single award.

Third, each of the source selections in this procurement, the original dated December 29, 2005 (AR I, Tab 4, at 112 (determination)), and the new selection dated July 11, 2006 (AR I, Tab 14, at 222 (determination)), chose a single contractor as the awardee, to the exclusion of the other offerors. There is nothing in either source selection decision that even hints of multiple awards.

Fourth, lest there be doubt, the declaration of the Contracting Officer admits that CBP did not intend to make multiple awards. Uberto Decl. ¶ 23 (“the initial intent was to award a single contract to one vendor”).

Fifth, CBP in fact has failed to invoke the mandatory procedures for the award of task orders. Most notably, over the past weeks CBP decided to award the work to DTI, effective November 1, 2006. Uberto Decl. ¶ 22. FASA and the FAR require agencies to afford multiple award contractor holders “a fair opportunity to be considered” for most task and delivery orders over $2,500. *See* Pub. L. No. 103-355, § 1054 (codified at 41 U.S.C. § 253j(b) and (c) (Supp. 2006)); 48 C.F.R. § 16.505(b). There is no evidence in the record that CBP ever respected those requirements, thus evincing that CBP did not consider ATI and DTI to be multiple award contractors. Thus, the history of the procurement – right up through the present – completely contradicts the notion that CBP views ATI and DTI as multiple-award contract holders.

Sixth, as recently as September 19, CBP emphatically explained to GAO that CBP would never exercise the option under ATI's contract – meaning it will end December 31. CBP, of course, cannot have a multiple-award contracting program with only one contractor. CBP wrote: "In this particular case, the Government cannot exercise the options under the Protester's contract, because the Federal Acquisition Regulation ('FAR') at 17.207 sets forth the rule applicable to the exercise of options." AR II, Tab 41, at 744. After setting forth its reasons, CBP concluded, "Thus, the C/O cannot make the determination that exercising an option with Protester 'is the most advantageous method of fulfilling the Government's need.'" AR II, Tab 41, at 744. To emphasize the point, CBP went on: "Even if the current contract award were not being challenged in a bid protest, and even if the current Protester's contract had been properly awarded in the first place, the C/O would simply re-solicit the effort, rather than exercise an option with the Protester, because the Protester's current pricing so greatly exceeds competitive market prices." *Id.* Thus, it is clear beyond cavil that ATI's contract will end no later than December 31.

Flying in the face of all this evidence, the Contracting Officer executed a declaration on October 12 that now professes to see value in retaining ATI as a possible alternative source, and asserts, "CBP has not yet reached a decision as to whether to exercise the options for out years for ATI, DTI, or both." Uberto Decl. ¶ 23. The Court should afford this statement no weight because it conflicts directly with the September 19 submission to the GAO, and appears to be nothing more than a post-hoc rationalization designed to divest this court of jurisdiction over a dubious source selection decision.

In *Systems Plus, Inc. v. United States*, 60 Fed. Cl. 757 (2006), the contracting officer sought to disqualify the protester from consideration for award based on a post-protest

determination of an appearance of impropriety and government counsel then moved for dismissal for lack of interested party status. *Id.* at 763. The court denied the motion, stating as follows:

> The actions of the Contracting Officer constituted a *post hoc* endeavor to remove or elide this court's jurisdiction to hear this case. The Contracting Officer rendered her decision only because of the pendency of this action . . . . This litigation-motivated contrivance by a contracting officer does not deserve any deference from this court. [Citations omitted.] Once this court has been accorded jurisdiction over an action, events may occur which moot the controversy. However, those events may not be manufactured by the defending agency solely for the purpose of divesting the court of its juridical power. [Citations omitted.]

*Id*. at 768-69. The court in *Systems Plus* rejected the contracting officer's "litigation-motivated contrivance." *Id.* Given the wealth of evidence conflicting with CBP's suggestion to this court that CBP may actually want to purchase ATI's services after all, the contracting officer's declaration should be similarly rejected.

We note the agency's declaration also was not prepared by a "program person," as the court ordered during the hearing on October 10, but by the Contracting Officer. CBP's disinclination to proffer a declaration from a program person casts further doubt on the weight to be given to the contracting officer's declaration.

The history of the requirement, the history of the procurement, and CBP's official written statements to GAO made as recently as last month all demonstrate that this procurement was a "winner-take-all" and CBP has neither the legal basis nor the genuine intention of administering two multiple award contracts.

## II. THE GOVERNMENT'S ARGUMENTS DO NOT VITIATE ATI'S INTERESTED PARTY STATUS

For the reasons set forth in Section I, *supra*, ATI has standing and is an interested party. The Government and Intervenor make several arguments to the contrary that are unavailing.

In their Motions to Dismiss, the Government and Intervenor argue that ATI lacks a direct economic interest because (1) ATI already has an award and is not entitled to a second award and (2) CBP has paid ATI much more than the $2,500 minimum set forth in the ATI contract. This first argument relies on sophistry, rather than on common sense or factually-similar legal precedent. ATI does not seek to hold two contracts; ATI seeks to overturn the award to DTI, while retaining its current contract (or receiving a new contract covering the same work). CBP recognized the distinct possibility of this outcome, else CBP would never have invited ATI to participate in the re-opened procurement. The Government argues that ATI lacks standing because ATI logically cannot establish that "there was a substantial chance it would have received the contract award," quoting *Alfa Laval Separation, Inc. v. United States*, 175 F.3d 1365, 1367 (Fed. Cir. 1999). *Alfa Laval* is inapposite because it involved the question of whether the substantially higher price of a protester rendered it unlikely to receive the award. Neither the Government nor Intervenor argues that ATI lacks standing on that basis. The Government also argues that ATI, as a contract holder, by definition cannot be a "disappointed bidder," citing *ABF Freight System, Inc. v. United States*, 55 Fed. Cl. 392 (2003). In *ABF Freight*, five companies filed post-award protests challenging the terms of the solicitation. *ABF Freight* at 394. The court ruled that three of the protesters lacked standing because they had received contracts and thus were not "disappointed bidders," while a protester that was disqualified and a protester that did not bid both had standing. *ABF Freight* at 397-99. The case is inapposite because the protesters were challenging various terms of the solicitation, not the contract awards to the other competitors. There is also no *per se* rule that a contract holder cannot protest a procurement action. *See, e.g., OTI America, Inc. v. United States*, 68 Fed. Cl. 108, 117 (2005) (a contractor told that the agency will make no further purchases from its

contract is an interested party to protest, where the contractor is effectively eliminated as part of a "down-select" process).

Second, the Government and Intervenor argue that ATI lacks a direct economic interest because CBP has paid ATI much more than the $2,500 minimum set forth in the ATI contract. The Government and Intervenor do not explain how that fact affects ATI's interested party status. The fact that CBP has awarded work to ATI under its contract is irrelevant to the relief ATI seeks. ATI ultimately seeks the ability to perform the balance of CBP's requirements through December 31, 2010. There is no logic in the notion that a company's past work for an agency vitiates the company's economic interest in the performance of future work for the agency. More than four years of likely contract revenue are at stake in this protest, and the past does not undo the economic interest in the outcome of this proceeding.

Related to the Government's and Intervenor's arguments, we emphasize that ATI is not seeking to enforce rights under its contract. The GAO decision incorrectly focused its analysis on ATI's rights under its existing contract. *Automation Technologies, Inc.—Recons.*, B-298618.3 (Oct. 4, 2006) (AR II, Tab 42, at 750-51). GAO relied heavily on its findings that ATI had no right under its contract to receive orders in excess of the guaranteed minimum and that ATI's contract did not preclude CBP from meeting its needs through another awarded ID/IQ contract. *Id*. By GAO's logic, an offeror that did not happen to hold a contract awarded during an earlier stage of the procurement also would lack standing, for that offeror would have no contract rights whatsoever. Almost no one would have the right to protest.

Addressing the Government's and Intervenor's final argument, ATI is not protesting the award of any task order to DTI. ATI is protesting the award of the underlying contract to DTI.

For this simple reason (plus the fact that these are not multiple award contracts in the first place), the restriction on protests of task orders is not relevant.

## III. FUNDAMENTAL FAIRNESS AND SOUND POLICY DICTATE THAT ATI SHOULD HAVE STANDING TO PROTEST

A basic principle of the federal procurement system is that award decisions are reviewable to ensure that they are in accordance with law and regulation. If the Government were to prevail here, it could dispense with fundamental fairness by insulating completely the award of work to DTI, and almost any other IDIQ contractor, from review. The Government argues that the July 2006 source selection of DTI's proposal over that of ATI is not subject to judicial review. At the same time, the contract terms and the other facts of this procurement indicate that CBP will not be conducting task order competitions subject to review of a task and delivery order ombudsman. The Government therefore wants it both ways: multiple awards that cannot be protested, but denial of any right by ATI to bid for or challenge task orders, to be followed soon by effective termination of its contract. In this way, the Government wishes to insulate the purchase of $40 million in services from public scrutiny.

By granting the Government's and Intervenor's motions, there would be an adverse systemic impact on the bid protest and task order ombudsman functions in federal procurement. The court would be inviting the agencies in the future to structure and administer their IDIQ procurements – especially their large procurements most susceptible to protest – to result in *de minimis* awards to all prospective protesters, even though the agency may consider those contractors for work only in the event of "severe performance deficiencies" by the preferred contractor or in the event of other low-probability situations. This risk is realistic, given the protest difficulties that agencies often experience in awarding large contracts.

* * * *

For all of the foregoing reasons, ATI requests that this Court rule that ATI has standing and is an interested party to pursue this protest.

Dated: October 18, 2006

Respectfully submitted,

s/Walter F. Zenner

Walter F. Zenner
PILLSBURY WINTHROP
SHAW PITTMAN LLP
1650 Tysons Boulevard
McLean, Virginia 22102
Tel: (703) 770-7603
Fax: (703) 770-7901

*Counsel of Record for Plaintiff Automation Technologies, Inc.*

*Of Counsel:*

John E. Jensen
Orest J. Jowyk
PILLSBURY WINTHROP
SHAW PITTMAN LLP
1650 Tysons Boulevard
McLean, Virginia 22102
Tel: (703) 770-7900