IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| AUTOMATION TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | No. 06-694C |
| | ) | (Judge Horn) |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| DIGITAL TECHNOLOGIES, INC., | ) | |
| | ) | |
| Intervenor. | ) | |
| | ) | |

**CORRECTED MOTION TO DISMISS**

Pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims, the United States respectfully requests that the Court dismiss plaintiff's complaint for lack of subject matter jurisdiction. Plaintiff Automated Technologies, Inc., the first awardee of an indefinite delivery / indefinite quantity ("ID/IQ") contract that resulted from the challenged solicitation, is not an "interested party" under 28 U.S.C. § 1491(b)(1) for purposes of standing to challenge the subsequent award to intervenor Digital Technologies, Inc. ("DTI").

**QUESTION PRESENTED**

Whether a successful IDIQ contract awardee has standing to challenge a second award to a competitor under the same solicitation, where the successful awardee has already received work far in excess of the minimum quantity specified in its contract.

## STATEMENT OF FACTS

In September 2005, U.S. Customs and Border Protection ("CBP") published solicitation No. HSBP1005R0541 for the acquisition of commercial information technology hardware maintenance services for the CBP Data Center Complex in Springfield, Virginia. AR 1 at 2, 96. According to the solicitation, the contractor would be required to maintain, diagnose, troubleshoot, repair, and replace the CBP mainframe computer equipment, associated peripherals, and storage sub-systems at its data center. Id.

Thomas M. Uberto was the contracting officer designated for the procurement. AR 1 at 1; AR 5 at 113. Because the exact quantity of equipment requiring service during the entire period of performance was uncertain, an ID/IQ-type contract type was selected. AR 1 at 2, 14, 41. The contract allowed CBP to place orders on a firm-fixed-price basis, calculated using the per-unit, all-inclusive monthly maintenance charges contained in the offeror's pricing schedule, multiplied by the quantity for each Contract Line Item Number (CLIN). Uberto Decl. ¶ 4.

Although Mr. Uberto determined on September 24, 2005, that the negotiation and award of a single contract would be in the best interests of the government, AR 43, the solicitation's instructions to offerors contained the instruction that the Government may accept multiple awards. AR 1 at 31. Accordingly, offerors were advised that the Government "may accept any item or group of items" from a particular offer and that the Government "reserve[d] the right to make an award on any item for a quantity less than the quantity offered." Id.

The hardware maintenance services were solicited for an anticipated five-year period of performance consisting of a base year and four one-year options. AR 1 at 2. The guaranteed minimum for the contract was set at $2,500. Id. The solicitation stated that the annual ordering ceiling for the base year and each of the four one-year options was not-to-exceed ("NTE")

$9,900,000, for a total ordering ceiling amount for the full contract term (including option years) NTE $49,500,000. Id. The solicitation closing date was October 11, 2005. AR 1 at 1, 96.

Finally, the "best value" evaluation procedures contemplated the possibility of an award to multiple awardees whose proposals represented the best value to the Government:

> A.40 BASIS FOR AWARD (TRADE-OFF ANALYSIS)
>
> **Award shall be made to the offeror(s) whose proposal(s) are determined to best meet the needs of [the] Government** after consideration of all factors – i.e., provides the "best value." "Best value" is defined as the procurement process that results in the most advantageous acquisition decision for the Government and is performed through an integrated assessment and trade-off analysis between cost or price and non-cost or price factors (i.e., technical evaluation factors and past performance).
>
> The basis for the award will be a detailed, integrated evaluation by the Government of how well the proposals satisfy the evaluation criteria specified herein. **Accordingly, the Government may make award to other than the lowest priced offeror(s) or other that the offeror(s) with the highest rating for non-cost of price factors.**
>
> The Contracting Officer of Source Selection Authority has the right to determine whether two or more proposals are "substantially equal" or whether any differences in the rating of non-cost or price factors are "significant." Between proposals rated substantially equal, cost/price will become a more significant factor. Between competing proposals, the Government is not willing to pay significantly more for a minor difference in the non-cost or price factors rating, nor is the Government willing to forego a significant difference in the non-cost or price factors rating in exchange for a small cost/price differential.

AR 1 at 44 (emphasis added).

Proposals were to be evaluated against the three major evaluation factors, listed in descending order of importance: technical merit, past performance, and price. AR 1 at 44. Technical merit was "significantly more important" than past performance, which in turn was "significantly more important" than price. Id.

Proposals were submitted in response to the solicitation from three firms, plaintiff ATI, intervenor DTI, and a third firm. AR 4 at 105; AR 18 (ATI Proposal); AR 19 (DTI Proposal). The contracting officer held negotiations with each of the offerors, and the offerors submitted revised proposals on December 1, 2005. AR 4 at 105; AR 20-23 at 418-559. The evaluation team rated ATI technically higher (85 percent) than DTI (76 percent) and the third firm (49 percent). Id. at 108; AR 24. ATI and DTI were rated equally for past performance by the CBP technical evaluators. AR 24 at 584-85; Uberto Decl. ¶ 11. Finally, ATI's revised prices were lower than those of DTI. AR 4 at 109-12.

A contract was awarded to ATI on January 4, 2006. AR 5 at 113. DTI subsequently protested the award to the Government Accountability Office ("GAO"). AR 6 at 115-19. Nonetheless, CBP determined that the urgency of the contract services required commencing performance. AR 7 at 120-21. Therefore, CBP began placing orders with ATI for maintenance services during the period of the GAO protest. AR 8 at 122; AR 9 at 150.

CBP and DTI participated in a GAO alternative dispute resolution mechanism called "outcome prediction" in March 2006. AR 10 at 200. GAO found during this informal procedure that CBP had engaged in unequal discussions with ATI by allowing ATI to correct what appeared to be an obvious mistake in its price proposal offer. Id.; Uberto Decl. ¶ 12. The agency agreed to take corrective action and re-opened the solicitation for revised price proposals. Id. GAO then dismissed DTI's protest. AR 11 at 202. The solicitation was amended to give offerors an opportunity to revise their price proposals; offerors were advised at that time that revised technical proposals would not be accepted. AR 12-13 at 203-12.

Task orders totaling over $3 million were issued to ATI during the pendency of the DTI protest to GAO. AR 8-9 at 122- 99. CBP placed another task order for over $1.5 million against

the ATI contract while CBP evaluated the revised pricing proposals following the corrective action. Id.

CBP received revised price proposals from ATI and DTI on April 11, 2006. AR 26-27 at 605-24. As a result of revised pricing, ATI's price was more than $100,000 per month higher than DTI's price; this per-month difference translated into more than $6,000,000 over the potential full period of performance (including option years). AR 14 at 216-20; Uberto Decl. ¶ 15.

In ATI's final technical proposal dated December 1, 2005, ATI claimed that it had "established an *exclusive relationship* with Fujitsu who is the only authorized provider of support for Fujitsu products" and that it held "the enviable position of being *the only firm* authorized to provide service for that equipment." AR 22 at 503. In contrast, DTI's revised technical proposal dated December 1, 2005, listed Fujitsu under service level agreements and claimed that "agreements with each vendor are available for DHS CBP review upon request." AR 21 at 451. To resolve what appeared to be an apparent conflict between the statements contained in the ATI and DTI offers with respect to their ability to service Fujitsu equipment, the contracting officer requested by letter dated June 15, 2006, that all offerors provide Original Equipment Manufacturer ("OEM") agreements. AR 28, 30. ATI and DTI responded shortly thereafter. AR 29, 31. OEM agreements received from ATI and DTI in response to CBP's inquiries attested that the OEMs – including Fujitsu – were willing to support either ATI or DTI. AR 29 at 629; AR 31 at 635-44.

Following the submission of revised price proposals and the clarification of the OEM agreements, CBP awarded a new contract under the same solicitation to DTI on July 26, 2006, with public notice on August 4, 2006. AR 15 at 223. ATI then filed a protest of the award to

DTI with the GAO on August 11, 2006. AR 36. CBP moved to dismiss the ATI protest for lack of standing, given that ATI had been awarded millions of dollars in task orders under the protested solicitation. AR 37. Indeed, CBP has placed a total of $7.9 million in work against the ATI contract. Uberto Decl. ¶ 13.

CBP then overrode the automatic stay of performance of the DTI contract upon ATI's protest. AR 17. ATI then filed suit in this Court. After briefs and a hearing, the Court in an August 31, 2006 bench ruling declared the CBP override invalid, and reinstated the automatic stay of performance that resulted from the ATI protest. Automated Technologies, Inc. v. United States, No. 06-599C, Sep. 11, 2006.

GAO dismissed the ATI protest on September 6, agreeing with CBP that ATI, as a contract awardee, suffered no cognizable prejudice. AR 39. GAO found that nothing in the RFP barred CBP from making multiple awards, and that the Government was under no additional obligation under ATI’s IDIQ contract because the guaranteed minimum amount of work had already been surpassed. Id.

ATI filed a request for reconsideration to GAO. AR 40. GAO denied the request on October 4, 2006, reiterating its finding that “ATI was not prejudiced by the award to DTI, since ATI already held an ID/IQ contract for the requirement – and thus could not receive another award if its protest were sustained.” Id.

ATI then filed another complaint in this Court, alleging that the award to DTI should be set aside. The Court asked that CBP prepare a declaration from the contracting officer summarizing the procurement and stating the Government’s intent going forward. The United States then filed a declaration signed by the contracting officer for the subject procurement.

The contracting officer explained in his declaration that, although his initial intent was to award a single contract to one vendor, the existence of a second contract by virtue of the corrective action is advantageous to the Government. Uberto Decl. ¶ 23. While the nature of the work indeed merits having only one contractor perform work *at any one time*, CBP may utilize the services of either contractor over the coming months should severe performance difficulties arise with the incumbent, be it ATI or DTI. Id. CBP has not yet decided to exercise the option years for ATI, DTI, or both, in light of the possibilities of performance under both contracts now available to CBP and the potential to evaluate the performance of both in performing the required tasks in the coming months. Id.

## LEGAL STANDARDS

The plaintiff has the burden of demonstrating subject matter jurisdiction by a preponderance of the evidence. Cedars-Sinai Med. Ctr. v. Watkins, 11 F.3d 1573, 1583 (Fed. Cir. 1993). With respect to the standing element of jurisdiction, the Court of Federal Claims' jurisdiction over pre-award or post-award bid protests is limited to actions brought by an "interested party." 28 U.S.C. § 1491(b)(1). Although there is no statutory definition of the term "interested party," the term is defined in the Competition in Contracting Act as "an actual or prospective bidder or offeror whose *direct economic interest* would be affected by the award of the contract or by failure to award the contract." 31 U.S.C. § 3551(2) (emphasis added); see Rex Serv. Corp. v. United States, 448 F.3d 1305, 1307 (Fed. Cir. 2006); Banknote Corp. of America, Inc. v. United States, 365 F.3d 1345, 1351-52 (Fed. Cir. 2004). With respect to the requisite "direct economic interest" in the context of a post-award bid protest, "Congress intended to extend the jurisdiction of the Court of Federal Claims to include post-award bid protest cases

brought under the APA by *disappointed bidders*." American Fed'n of Gov't Employees, Local 1482 v. United States, 258 F.3d 1294, 1302 (Fed. Cir. 2001) (emphasis added).

The Court of Appeals for the Federal Circuit also has held that "to prevail in a protest, the protester must show not only a significant error in the procurement process, but also that the error prejudiced it." Data General Corp. v. Johnson, 78 F.3d 1556, 1562 (Fed. Cir. 1996). The issue for the Court to decide is whether ATI can establish the necessary prejudice to seek the relief it requests, that is, whether ATI can establish that "there was a substantial chance it would have received the contract award" but for the errors it alleges. Alfa Laval Separation, Inc. v. United States, 175 F.3d 1365, 1367 (Fed. Cir. 1999) (quoting Statistica, Inc. v. Christopher, 102 F.3d 1577, 1582 (Fed. Cir. 1996)). The Federal Circuit has added that "prejudice (or injury) is a necessary element of standing." Myers Investigative and Sec. Servs., Inc. v. United States, 275 F.3d 1366, 1370 (Fed. Cir. 2002).

Therefore, ATI bears the burden to establish that it has standing to bring the instant protest, that is, that it had a "direct economic interest in the procurement" and that it had a "substantial chance" of obtaining the award but for the errors alleged. Rex Serv. Corp., 448 F.3d at 1307; Candle Corp. v. United States, 40 Fed. Cl. 658, 665 (1998).

## ARGUMENT

The Court should dismiss the protest on the basis that ATI lacks standing to protest the award to DTI. ATI cannot show that it had either a "direct economic interest" in the procurement or a "substantial chance" of receiving the award because it *already has* received an award under the same solicitation and has been paid for work far in excess of the minimum amount stated in the ID/IQ contract. There is no scenario under which ATI could have been entitled to either a second award or under which the Government would be obligated to order

work beyond what has already been performed. To the extent that ATI's protest can be construed as a challenge to any task orders issued to DTI, Congress has placed challenges to ID/IQ contract task orders beyond the jurisdiction of the Court with certain exceptions not alleged or applicable here.

ATI, as an awardee, by definition cannot be a "disappointed bidder" in the CBP procurement. ATI had no chance to obtain a second award of the ID/IQ contract under the challenged solicitation. The Government elected to procure the computer maintenance services using an ID/IQ type contract. ATI was awarded an ID/IQ contract under the solicitation. AR 1 at 2; AR 5 at 113. The solicitation contemplated multiple awards. AR 1 at 31 ("Multiple awards"); AR 1 at 44 ("Award shall be made to the offeror(s) whose proposal(s) are determined to meet the needs of the Government. . . ."). Accordingly, plaintiff is not a disappointed bidder, but an awardee. ATI's protest is similar to that of three of the protestors in ABF Freight System, Inc. v. United States, 55 Fed. Cl. 392 (2003). In ABF Freight System, the Court stated: "The court does not see how a plaintiff asserting claims pertaining to a contract it has made with the government could be a "disappointed bidder" for bid protest purposes. Id. at 397. The Court quickly dismissed the protests of the three awardees, holding:

> Because plaintiffs Overnite, Roadway, and Yellow received contract awards under the solicitation complained of, *they are not disappointed bidders and do not have standing to assert this protest*. Accordingly, the claims of plaintiffs Overnite, Roadway, and Yellow are dismissed without prejudice for lack of jurisdiction.

Id. (emphasis added).

The instant protest brought by ATI is not legally distinguishable from that of the three awardees in ABF Freight System. While the ATI contract is an ID/IQ type, the fact remains that ATI is a successful bidder; moreover, ATI's success is all the greater considering that the

Government has placed $7.9 million in task orders against the ATI contract, far in excess of the $2,500 guaranteed by the terms of the solicitation. Uberto Decl. ¶ 13.

Second, ATI may claim that the actions by the Government in awarding contracts to two offerors is a subterfuge to avoid a protest or that the awards are somehow unfair because they deny ATI a means to protest. As described above, there is no unfairness to ATI where the company has not only been awarded the contract, but has also been awarded millions of dollars in contract services. Moreover, both awards are subject to the protest of the third firm considered in the procurement, the only true "disappointed bidder."

Further, the awards create a lawful and advantageous situation for CBP, an agency that has now contracted with two qualified offerors to provide critical maintenance services to the Government. As the contracting officer stated in his declaration, there is no plan to terminate ATI, and having both firms available allows CBP to use the services of either should the need arise. Uberto Decl. ¶ 23. Indeed, this is the essence of a multiple award ID/IQ contract. Having two qualified contractors available to perform services makes sense given the importance of the computer hardware and CBP's stated need for uninterrupted equipment availability. AR 1 at 2 ("CBP requires constant 100% availability for the subject critical equipment. Only firms with a high level of confidence in providing the required services should pursue this opportunity.") In fact, the solicitation advised that a contractor's failure to provide constant service may result in contract termination, making the availability of a second contractor a true advantage in the event the Government elects to terminate. Id. While ATI will be quick to point out that CBP did not intend a multiple awards at the time of the solicitation, this is largely irrelevant to the current setting where the Government has made both awards in good faith and chooses to maintain both contracts in order to obtain the best value and performance.

Finally, to the extent ATI's protest can be construed as a prospective challenge to any future task orders issued to DTI under its contract, the protest is statutorily barred. See 41 U.S.C. 253j. This section states that "[a] protest is not authorized in connection with the issuance or proposed issuance of a task or delivery order except for a protest on the ground that the order increases the scope, period, or maximum value of the contract under which the order is issued." 41 U.S.C. § 253j(d) (ATI has not alleged that any of the statutory exceptions apply here). This Court has acknowledged the task order protest bar in a number of cases. For example, in Labat-Anderson Inc. v. United States, 50 Fed. Cl. 99, 104 (2001), the Court stated that "the plain language of the statutory provision [Section 253j(d)] clearly bars task order protests." See also Group Seven Assocs. LLC v. United States, 68 Fed. Cl. 28 (2005). In a recent case, the Court stated the following:

> The court finds no reason to disagree with the analysis of Section 253j(d)'s bid protest bar in Labat and Group Seven, as it applies to task orders on multiple award IDIQ contracts. This court cannot frustrate the intent of Congress, which was to exempt from protest the issuance of individual task orders to contractors who had already received awards, subject to protest, of their master IDIQ contracts. In the place of agency protests, Government Accountability Office (GAO) protests or judicial review, Congress saw fit to offer disappointed task order bidders recourse to the agency's task and delivery order ombudsman.

A&D Fire Protection, Inc. v. United States, No. 06-467C, slip op. at 13 (Aug. 10, 2006), citing 41 U.S.C. 253j(e) and 48 C.F.R. 16.505(b)(5). In this case, DTI's award is subject to protest not by ATI, but only by the one "disappointed bidder" involved in the procurement.

**CONCLUSION**

For the reasons discussed above, we respectfully request that the Court dismiss ATI's protest for lack of jurisdiction.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Jeanne E. Davidson
JEANNE E. DAVIDSON
Assistant Director

s/Gregg M. Schwind
GREGG M. SCHWIND
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, DC 20530
Tel. (202) 353-2345
Fax (202) 514-8624

October 16, 2006

Attorneys for Defendant