# In the United States Court of Federal Claims

**No. 06-694C**
**Filed: October 27, 2006**

* * * * * * * * * * * * * *

| | | |
|---|---|---|
| **AUTOMATION TECHNOLOGIES, INC.,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Post-Award Bid Protest; Standing; Multiple Indefinite Delivery/Indefinite Quantity Contracts; Task Order Protest.** |
| **UNITED STATES,** | * | |
| **Defendant,** | * | |
| **and** | * | |
| **DIGITAL TECHNOLOGIES, INC.,** | * | |
| **Defendant-Intervenor.** | * | |

* * * * * * * * * * * * * *

**O R D E R**

The court held oral argument on October 19, 2006, on the defendant's and intervenor's motions to dismiss the complaint in the above-captioned, bid protest case, based on lack of standing. Because of impending critical dates, in a bench ruling issued on October 19, 2006, the court concluded that plaintiff ATI lacked standing under the facts of the case, and granted the defendant's and intervenor's motions to dismiss. This Order memorializes the October 19, 2006 bench ruling.

In the initial hearing in the above-captioned bid protest, defendant and intervenor, noting Government Accountability Office (GAO) decisions in their favor, challenged Automated Technologies, Inc.'s (ATI's) standing to bring this protest. See Automated Technologies, Inc., Comp. Gen. Dec. B-298618, B-298618.2, slip op. at 1-2 (Sept. 6, 2006); Automated Technologies, Inc., Comp. Gen. Dec. B-298618.3, slip op. at 1-3 (Oct. 4, 2006) (reconsideration).

This case has a history of protests to the GAO and this court. Initially, the United States Customs and Border Protection (Customs) agency, part of the Department of Homeland Security, solicited proposals for computer maintenance services. Plaintiff Automation Technologies, Inc. (ATI), intervenor Digital Technologies, Inc. (DTI), and a third offeror, Signature Technology Group, Inc. (STG), submitted proposals. On this initial solicitation evaluation, the technical evaluation score for ATI was higher than DTI's score, 85 percent to 76 percent, and ATI's price was lower than DTI's price. Customs awarded the contract to ATI on January 4, 2006. On January 11, 2006, DTI filed a protest with the GAO (Comp. Gen. B-297851). An automatic stay of the award to ATI stemmed from the GAO protest, pursuant to 31 U.S.C. § 3553(d)(3)(A) (2000). A Customs official, however, determined that it was in the "best interests of the United States" to override the automatic stay, pursuant to 31 U.S.C. § 3553(d)(3)(C)(i)(I), permitting ATI to proceed with the contract.

Upon hearing that the GAO believed improper discussions may have taken place, Customs took corrective action and, as a result, DTI's protest was dismissed by the GAO on March 23, 2006. The agency's corrective action included an amendment of the solicitation, receipt of revised price proposals from ATI, DTI and STG, and a new source selection decision. Since only price proposals were re-submitted, the technical submissions and scores remained the same from the earlier evaluation. This time, DTI was the lower priced bidder compared to ATI. According to Customs' June 28, 2006 Price Negotiation Memorandum:

> The solicitation stated that between competing proposals, the Government is not willing to pay *significantly more for a minor difference in the non-cost or [non-]price factors rating . . . .*
>
> * * *
>
> CBP [Customs and Border Protection] is unwilling to pay 17% more than DTI's offered price to obtain a 9 percentage point increase in technical scoring, particularly when DTI has provided this service to CBP in the past at an acceptable performance level.

(emphasis in original).

On August 4, 2006, Customs made a second computer maintenance award under the solicitation, this time to DTI. Throughout this period, ATI was performing the work under the contract it had been awarded on January 4, 2006, with the first task order under the contract having been issued by the government on January 24, 2006. Subsequent task orders have been issued to ATI and continue to this date.[1] On August 11, 2006, ATI filed a bid protest with the GAO on this second award to DTI (Comp. Gen. B-298618). Another automatic stay went into effect pursuant to 31 U.S.C. § 3553(d)(3)(A). On August 17, 2006,

---

[1] Over the course of its contract with ATI, the government issued task orders in the amount of $7,894,436.00, far in excess of the contract guaranteed minimum of $2500.00.

a Customs official executed a Determination and Findings (D&F) to override the automatic stay. The D&F concluded that it was in the "best interests of the United States" to proceed with the award to DTI, because significant cost savings would result. ATI filed a complaint in this court, challenging the agency's override of the automatic stay stemming from ATI's protest before the GAO. This court issued a bench ruling on August 31, 2006, in favor of ATI, followed by a written decision memorializing the bench ruling. See Automation Technologies, Inc. v. United States, No. 06-599C (Fed. Cl. Sept. 11, 2006). When this court issued the order setting aside the override decision issued by Customs, the automatic stay stemming from ATI's protest before the GAO was reinstated. See Automation Technologies, Inc. v. United States, No. 06-599C (Fed. Cl. Sept. 11, 2006).

The GAO issued its decision on September 6, 2006, dismissing ATI's protest on the grounds that ATI had not been prejudiced, because it "already holds a contract for the requirement, [and] there is no additional remedy available to it . . . ." Automation Technologies, Inc., Comp. Gen. Dec. B-298518, B-298518.2, slip op. at 2 (Sept. 6, 2006). The GAO's rationale was as follows:

> The agency asserts that we should dismiss the protest because ATI is not prejudiced by the award of a contract to DTI. Specifically, the agency points out that it has not terminated ATI's contract and, consequently, there are now simply two IDIQ contracts for the work in question, and either DTI or ATI may receive delivery orders for the agency's requirements. The agency reasons that, since the most ATI could expect as a consequence of its protest is the award of a contract, and since the firm already has a contract, it is not prejudiced by the agency's award of a second contract to DTI.
>
> ATI responds that the agency's award of a contract to DTI effectively eliminates any chance of ATI's receiving further delivery orders under its contract. In this regard, ATI maintains that the agency has historically used only one contractor to meet it requirements, and notes that there was nothing in the RFP indicating that the agency intended to use more than one contractor to fulfill its future requirements.
>
> Prejudice is an essential element of every viable protest, and where none is shown or otherwise apparent, we will not sustain a protest, even if the agency's actions may arguably have been improper. We agree with the agency that, since the protester already holds a contract for the requirement, there is no additional remedy available to it, and that, consequently, ATI has not been prejudiced by the award of a contract to DTI. There is nothing in the RFP that prohibited the agency from making multiple awards and, since the contracts in question are IDIQ contracts, the agency is under no legal obligation to obtain its requirements from one firm or the other (beyond the minimum guaranteed amount specified in the contracts). ATI's speculation as to the manner in which the agency may issue future delivery orders is not a sufficient basis for finding prejudice.

Automation Technologies, Inc., Comp. Gen. Dec. B-298618, B-298618.2, slip op. at 1-2 (Sept. 6, 2006) (citation omitted).

On September 12, 2006, ATI requested reconsideration of the September 6, 2006 GAO decision. In an October 4, 2006 decision, the GAO denied ATI's request for reconsideration. The second GAO opinion stated:

> In its request for reconsideration, ATI states that, as it predicted, the agency has terminated all of the work under its contract and intends to fulfill its requirements using DTI's contract. ATI concludes that it has been prejudiced because it will be deprived of receiving further work under its contract. In support of its argument, ATI cites our decision Recon Optical, Inc.; Lockheed-Martin Corp., Fairchild Sys., B-272239, B-272239.2, July 17, 1996, 96-2 CPD ¶ 21, in which we dismissed protests filed by two firms against the award of a contract to the other. We found that the direct economic interests of each firm were unaffected by the award of a contract to the other, since neither firm's contract work would be reduced by the award to the other firm. ATI claims that we should undertake the same analysis here, and conclude that the value of its contract has been reduced by the award of the contract to DTI, and that it therefore has been prejudiced.
>
> * * *
>
> It remains our position – ATI has not shown that it is erroneous – that ATI was not prejudiced by the award to DTI because, due to the nature of ID/IQ contracts, the agency was under no legal obligation to meet its requirement under ATI's ID/IQ contract in the first place. Rather, after the guaranteed contract minimum was met, the agency was free to meet its requirement by any other proper means it chose, including by awarding, and then ordering under, another ID/IQ contract. For the same reason, ATI was not prejudiced by the agency's decision to cancel further orders with ATI in favor of orders to DTI. Absent an obligation on the agency's part to order work under ATI's contract, ATI had no legally cognizable expectation of receiving further work under that contract.[2] Depriving ATI of something to which it would not otherwise be entitled cannot satisfy the requirement for prejudice.
>
> Our decision in Recon is inapposite here. While we examined whether the protesters' direct economic interests there were sufficient to warrant hearing their protests (in the analogous context of interested party status), the contracts in that case were not ID/IQ contracts, but contracts under which the government was obligated to order specific work from

---

[2] On the other hand, there is no legal impediment to the agency's placing an order under ATI's contract at some point in the future since the agency has not terminated the firm's contract. (verbatim footnote in the GAO opinion).

> each contractor. Given the government's obligation and the awardees' rights under those contracts, each awardee's economic interest could have been negatively affected by the award of the other contract if the work under one firm's contract had been reduced as a consequence of the other firm receiving work under its contract. (We found no negative economic impact to either firm.) The same is not true under ID/IQ contracts where, again, the government is not legally obligated (beyond the guaranteed minimum) to order work under a particular ID/IQ contract.

Automation Technologies, Inc., Comp. Gen. Dec. B-298618.3, slip op. at 2-3 (Oct. 4, 2006). Upon receiving a denial of its request for reconsideration from the GAO, ATI filed a complaint in this court on October 5, 2006. As noted above, defendant filed a motion to dismiss ATI's complaint based on lack of standing.[3]

Standing

Defendant and intervenor argue that ATI is not an interested party and, therefore, lacks standing to brings this bid protest. According to a decision by the United States Court of Appeals for the Federal Circuit, "[s]tanding to sue is a threshold requirement in every federal action." Sicom Sys., Ltd. v. Agilent Tech., 427 F.3d 971, 975 (Fed. Cir. 2005). The party invoking federal jurisdiction bears the burden of establishing standing. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992); Myers Investigative & Sec. Servs., Inc., v. United States, 275 F.3d 1366, 1369 (Fed. Cir. 2002); see also Rothe Dev. Corp. v. Dep't of Def., 413 F.3d 1327, 1334 (Fed. Cir. 2005).

The Tucker Act provides that this court has "jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491 (b)(1) (2000); see also Banknote Corp. of Am., Inc. v. United States, 365 F.3d 1345, 1351-52 (Fed. Cir. 2004) ("Under the Competition in Contracting Act (CICA), which governs the bid protest jurisdiction of the General Accounting Office (GAO), a protest may be filed by an 'interested party.' 31 U.S.C. § 3551(1). The CICA explicitly defines the term as 'an actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract or by failure to award the contract.' 31 U.S.C. § 3551(2)."); Info. Tech. & Applications Corp. v. United States, 316 F.3d 1312, 1319 (Fed. Cir. 2003) (in order to establish standing, a plaintiff must

[3] Defendant filed an October 18, 2006 motion for leave to file a corrected copy of its motion to dismiss. Without objection from the other parties, the court granted defendant's motion. Plaintiff ATI filed an October 18, 2006, amended, and unopposed, motion to supplement the record with two of its filings before the Government Accountability Office (GAO), which the court also granted.

show that it is an "'actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract or by failure to award the contract'") (quoting Am. Fed'n of Gov't Employees v. United States, 258 F.3d 1294, 1302 (Fed. Cir. 2001), cert. denied, 534 U.S. 1113 (2002))), reh'g and reh'g en banc denied (2003).

Although section 1491(b)(1) does not define the term "interested party," the United States Court of Appeals for the Federal Circuit has adopted the definition set forth in the Competition in Contracting Act, 31 U.S.C. § 3551(2)(A) (2000). According to the court:

> "[P]rejudice (or injury) is a necessary element of standing. . . . [A] potential bidder must establish that it had a substantial chance of securing the award in order to establish standing. . . . In bid protests under the Tucker Act, "we . . . construe the term 'interested party' in section 1491(b)(1) in accordance with the [standing requirements of the] CICA[4] and hold that standing under § 1491(b)(1) is limited to actual or prospective bidders or offerors whose direct economic interest would be affected by the award of the contract or by failure to award the contract." Am. Fed'n [of Gov't Employees v. United States, 258 F.3d 1294, 1302 (Fed. Cir. 2001)]. Thus, the substantial chance rule continues to apply.

Myers Investigative & Sec. Servs., Inc. v. United States, 275 F.3d at 1370 (third omission in original); see also Info.Tech. & Applications Corp. v. United States, 316 F.3d at 1319 ("[B]ecause the question of prejudice goes directly to the question of standing, the prejudice issue must be reached before addressing the merits."). To establish prejudice, a protestor must demonstrate that it had a "substantial chance" to have received the award, had it not been for the agency errors in the procurement. Bannum, Inc. v. United States, 404 F.3d 1346, 1358 (Fed. Cir. 2005); Galen Med. Assocs., Inc. v. United States, 369 F.3d 1324, 1331 (Fed. Cir.), reh'g denied (2004). As discussed below, ATI has not carried its burden of establishing its standing to bring this protest.

Awards to ATI and DTI

Customs contracting officer Thomas M. Uberto, in a sworn declaration filed with the court, stated that he originally contemplated that a single contract would be issued for computer maintenance services at Customs' Data Center Complex in Springfield, Virginia. In fact, Mr. Uberto executed a Determination and Findings (D & F), dated September 24, 2005, that stated: "2. Due to the nature of this requirement . . . the projected task orders are so integrally related that only a single contractor can reasonably perform the work. . . . 3. The expected cost of administration of multiple contracts outweighs the expected

[4] See 31 U.S.C. § 3551, which offers the following definition: "The term 'interested party', with respect to a contract or a solicitation or other request for offers described in paragraph (1), means an actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract or by failure to award the contract."

benefits of making multiple awards." Mr. Uberto concluded in his D & F that, "[b]ased upon the foregoing information, it is hereby determined that negotiation and award of a single award contract for hardware maintenance services is in the best interests of the Government." Customs awarded the contract to ATI on January 4, 2006.

As noted above, on January 11, 2006, DTI protested the ATI award before the GAO. As a result of the protest, Customs took corrective action, in the form of reopening the solicitation for revised price proposals. During the protest activity, Customs relied on the contract with ATI for its computer maintenance services. Between January 24, 2006 and September 1, 2006, Customs issued six task orders to ATI under its contract, totaling $7,894,436.00.

After the resubmitted price proposals, DTI's revised price proposal was lower than ATI's revised price proposal, leading Customs to award a second computer maintenance contract, this time to DTI. Before the award to DTI, Customs explored an issue related to vender support from an Original Equipment Manufacturer (OEM). ATI believed it had an exclusive relationship with OEM Fujitsu, which was the only firm authorized to provide service on Fujitsu equipment. DTI, however, believed that Fujitsu also would provide vendor support to it. Upon investigating this issue, Customs found that vendor Fujitsu would support either ATI or DTI. Mr. Uberto stated in his declaration that "[h]ad ATI's agreement with Fujitsu actually been exclusive, then this would have provided support for a best value award decision in favor of ATI." Mr. Uberto further stated that: "Because both ATI and DTI actually had OEM agreements, and had both performed well in the past, the primary difference between the offers following the corrective action was a new difference in price. Therefore, a new award decision (to lower-priced DTI) was finalized on July 18, 2006."

Mr. Uberto's declaration indicated that Customs does not intend to terminate ATI's contract, which expires on its own terms on December 31, 2006, unless an option in ATI's contract is exercised. Furthermore, according to Mr. Uberto, unless the court intervenes before November 1, 2006, Customs intends to issue a task order to DTI under the more recently awarded contract. Mr. Uberto's declaration explains:

> Although the initial intent was to award a single contract to one vendor, the existence of a second contract by virtue of the corrective action is advantageous to the Government. While CBP's [Customs] intent and the nature of the work merit having only one contractor perform work at any one time, CBP may utilize the services of either contractor over the coming months should severe performance difficulties arise with the incumbent, be it ATI or DTI. CBP has not yet reached a decision as to whether to exercise the options for out years to ATI, DTI, or both, in light of the possibilities of performance under both contracts now available to CBP and the potential to evaluate the performance of both in performing the required tasks in the coming months.

Even though Mr. Uberto stated that multiple awards were not initially contemplated, the solicitation contained an instruction to offerors titled "Multiple awards." See solicitation provision Section A.31 52.212-1 Instructions to Offerors–Commercial Items (JAN 2005). The multiple award provision contained broad language which did not prohibit, but appeared to permit multiple awards. In addition, the evaluation procedures in the solicitation appeared to permit and acknowledge the possibility of multiple awards. See solicitation provision A.40 Basis of Award (Trade-Off Analysis) ("Award shall be made to the offeror(s) whose proposal(s) are determined to best meet the needs of Government after consideration of all factors–i.e., provides the 'best value.' . . . [T]he Government may make award to other than the lowest prices offeror(s) or other than the offeror(s) with the highest rating for non-cost or [non-]price factors.")

Defendant argues that the two awards, one to ATI and one to DTI were permitted and could be advantageous to Customs: "As the contracting officer stated in his declaration, there is no plan to terminate ATI, and having both firms available allows CBP to use the services of either should the need arise. Indeed, this is the essence of a multiple award ID/IQ contract. Having two qualified contractors available to perform services makes sense given the importance of the computer hardware and CBP's stated need for uninterrupted equipment availability."

ATI argues that the normal provisions for a multiple award situation were not employed by Customs. ATI argues that it might not have a fair opportunity for future task orders, as well as articulates a concern that an ombudsman is not designated if future task orders are improperly given to DTI rather than ATI. As discussed more fully below, ATI is attempting to avoid a statutory prohibition on protests of task orders by asserting at oral argument that ATI is "not protesting the prospective award of a task order." To the extent that ATI is, in fact, complaining about the possibility of not being awarded future task orders, such a protest has been foreclosed by Congress, as indicated in the discussion below of the Federal Acquisition Streamlining Act of 1994 (FASA), codified at 41 U.S.C. § 253j (2000).

ATI also projects that the options on its contract will not be exercised once DTI is given its first task order on November 1, 2006, and that its contract will expire on its own terms on December 31, 2006. Contracting officer Uberto stated in his declaration that: "CBP has not yet reached a decision as to whether to exercise the options for out years for ATI, DTI, or both, in light of the possibililties of performance under both contracts now available to CBP and the potential to evaluate the performance of both in performing the required tasks in the coming months." The Federal Acquisition Regulation addresses the exercise of options. FAR 17.207, titled "Exercise of Options," states that, to exercise an option, the contracting officer must decide that exercising it is the most advantageous method of fulfilling the government's needs, and that a new solicitation will not produce a better price or more advantageous offer than the one in the option. 48 C.F.R. § 17.207 (2005).

Plaintiff has not demonstrated, nor, as counsel stated at oral argument, does plaintiff claim, that the current state of the procurement of computer maintenance services was orchestrated by Customs, in bad faith, to deprive ATI of a right to protest. According to the information in the record, the awards to both ATI and DTI have resulted, not from an initial intention to make multiple awards, but from the critical need on the part of Customs for comprehensive computer maintenance services, in the midst of a protest environment involving multiple trips to the GAO and this court by both ATI and DTI. ATI acknowledged as much at oral argument, when pointedly asked by the court whether ATI was alleging bad faith on the part of the government. Counsel's response was, "[n]o, Your Honor, we're not resting our argument on bad faith. There may be some legal maneuvering going on, but that's not the basis of the protest."

Defendant argues that: "ATI, as an awardee, by definition cannot be a 'disappointed bidder' in the CBP procurement." Defendant cites to ABF Freight System, Inc. v. United States, 55 Fed. Cl. 392 (2003). In ABF, the solicitation contemplated the award of multiple, indefinite delivery/indefinite quantity (ID/IQ) contracts for transportation services. Id. at 394. Three of the plaintiffs had been awarded contracts by the agency. Id. at 396. The court stated: "Because plaintiffs . . . received contract awards under the solicitation complained of, they are not disappointed bidders and do not have standing to assert this protest." Id. at 397.

The work provided for in DTI's contract, computer maintenance services at Customs' computer center, is the same work provided for in ATI's contract, stemming from the same solicitation. Although not the original intention of Customs, under the unique facts and circumstances of this case, multiple contract awards effectively have been made to ATI and DTI, nor is there any statutory or regulatory prohibition from making multiple ID/IQ contracts. Even the solicitation language albeit somewhat unclearly appeared to allow multiple awards and could be read to contemplate that possibility in the evaluation procedures. Hypothetically, if ATI's protest before this court were found to be meritorious; and if Customs then reopened and recompeted the procurement; and if ATI won the recompeted contract, ATI would have re-achieved the contract, with options, it currently possesses, with the same guaranteed minimum of $2500.00 in task orders (an amount exceeded by the $7,894,436.00 already obligated through September 1, 2006 by Customs to ATI's contract). Currently, ATI is not prejudiced under these facts.

In its response to defendant and intervenor, ATI cites to the Recon Optical case in support of its standing to bring this protest. Recon Optical, Inc.; Lockheed-Martin Corp., Fairchild Sys., B-272239, B-272239.2, 96-2 CPD ¶ 21 (1996), 1996 WL 399187 (Comp. Gen. July 17, 1996). The solicitation in Recon Optical provided for multiple awards. Id. at *1-*2. Recon Optical's proposal was for $3,258,123.00 and Fairchild Systems' proposal was for $2,500,000.00. Id. at *2. Separate contracts were awarded to both offerors. Id. at *2. Each awardee protested the award to the other. Id. at *1. However, both protests were dismissed by the GAO for lack of standing. Id. at *1, *3. The GAO's rationale was that:

> Since each protester here is a fully successful offeror under the RFP each would be unable to obtain any additional stake in this procurement even if its protest of the other award were sustained. We therefore see no basis to conclude that either protester possesses the requisite direct economic interest necessary to maintain its protest.
>
> While both protesters allege that they do have a direct economic interest in the protest because the contract awarded to the other protester essentially obligates funds which the agency would otherwise be able to apply to their own contract should the proposed costs of their respective proposal not be sufficient to cover the development and testing of the prototype camera, this type of speculative economic interest is not sufficiently direct to render the protesters interested parties.

Recon Optical, Inc.; Lockheed-Martin Corp., Fairchild Sys., 1996 WL 399187, at *2-*3 (citation omitted). ATI argues that, using language from Recon Optical, a protester would have standing if its award would be "reduced, increased, or otherwise affected by the other protester receiving or not receiving an award." Id. at *2. Moreover, ATI is concerned about events after November 1, 2006, when DTI is issued its first contract task order and December 31, 2006, when ATI's current ID/IQ contract with the government expires. However, as the GAO concluded in Recon Optical, regarding the two protesters in that case, ATI's economic interest in the present case is too speculative. See id. at *3. In the particular ID/IQ contracts with both ATI and DTI, Customs is not legally obligated beyond the guaranteed minimum of $2500.00 in task orders. Nor are options automatically exercised. The FAR provides that, before an option is exercised, the contracting officer must decide that doing so is the most advantageous method of fulfilling the government's needs, and that another option or a new solicitation will not produce a better price or more advantageous offer than the one in the option. See 48 C.F.R. § 17.207. Although somewhat sympathetic to ATI's possible plight after December 31, 2006, the court concludes that, under the unusual facts and circumstances of this case, ATI lacks standing to protest.

The Federal Acquisition Streamlining Act of 1994

Defendant also argues that "to the extent ATI's protest can be construed as a prospective challenge to any future task orders issued to DTI under its contract, the protest is statutorily barred," citing the Federal Acquisition Streamlining Act of 1994 (FASA), Pub. L. No. 103-355, Title I, § 1054(a), 108 Stat. 3264 (1994) (codified 41 U.S.C. § 253j (2000)); see also 48 C.F.R. § 16.505(a)(9) (2005). Intervenor concurs with defendant. ATI, however, in response, insisted at oral argument that it is "not protesting the prospective award of a task order," but the award of a contract to DTI. The FASA language states: "A protest is not authorized in connection with the issuance or proposed issuance of a task or delivery order except for a protest on the ground that the order increases the scope, period, or maximum value of the contract under which the order is issued." 41 U.S.C. § 253j(d). Defendant and intervenor both cite to the case of A & D Fire Protection, Inc., in which both

A & D and Hernandez Construction Corporation were awarded master, ID/IQ, contracts by the General Services Administration (GSA). A & D Fire Protection, Inc. v. United States, 72 Fed. Cl. 126, 127-28 (2006). A & D protested the GSA award to Hernandez of a task order to replace a fire alarm system in a federal building. Id. A & D was not protesting the award of the master contract to Hernandez, but one of the task orders under the master contract. According to the FASA statute, the mechanism to hear complaints concerning the award of individual task orders is an agency ombudsman, rather than traditional avenues of protest. See A & D Fire Protection, Inc. v. United States, 72 Fed. Cl. at 133-34 (citing Group Seven Assocs., LLC v. United States, 68 Fed. Cl. 28, 32-33 (2005) and Labat-Anderson Inc. v. United States, 50 Fed. Cl. 99, 104-05 (2001)); 41 U.S.C. § 253j(e); 48 C.F.R. § 16.505(b)(5).

During oral argument, defendant argued that:

> the true nature of the challenge that's before the Court today – is really a [per]emptory challenge to a future task order, a task order that in the future is likely to be issued to DTI. . . . ATI is claiming that it's prejudiced. But the only prejudice, the only economic interest that it has in this fight is the amount on the task order that's eventually issued to DTI. That, we believe, is the true nature of this case.

The FASA protest prohibitions of 41 U.S.C. § 253j(d) and FAR 16.505(a)(9) both provide that the traditional protest routes of the "issuance or proposed issuance" of a task order or delivery order are not permitted, save for exceptions in the statute as developed by case law, which are not applicable to this case. See A & D Fire Protection, Inc. v. United States, 72 Fed. Cl. at 133-34. Alternatively, therefore, to the extent that ATI's actions are in the nature of a protest to future task orders under the terms of its contract, this court is not the proper forum.

For the foregoing reasons, the court concludes that ATI, which is currently in possession of an ID/IQ computer maintenance contract awarded by Customs, was not prejudiced by the award of a second computer maintenance contract to DTI and, therefore, has no standing to bring a protest against the second award. The clerk's office shall **DISMISS** the plaintiff's complaint, and enter **JUDGMENT** in favor of defendant and intervenor. Plaintiff's motion for injunctive relief, and the remaining briefing schedule set out in the court's Order of October 11, 2006, are mooted by this decision.

**IT IS SO ORDERED.**

s/Marian Blank Horn
**MARIAN BLANK HORN**
**Judge**